287 So.2d 43 (1973)
In re GRAND JURY INVESTIGATION.
In re Frank COBO, Movant.
Nos. 43644 and 43649.
Supreme Court of Florida.
December 5, 1973.
*44 Tobias Simon and Elizabeth J. duFresne, Stephens & McMillen, Miami, for appellant-petitioner.
Robert L. Shevin, Atty. Gen., and Barry Scott Richard, Asst. Atty. Gen., for appellee-respondent.
PER CURIAM.
This cause is before us, both on direct appeal from the Circuit Court, Volusia County,[1] and on petition for writ of certiorari to the District Court of Appeal, First District.[2] In response to the direct appeal, appellee has filed a motion to dismiss. As to the petition for writ of certiorari, we have ordered that action thereupon be deferred pending the disposition of the appeal. On September 11, 1973, this Court heard oral argument on the direct appeal and, on the basis of the record, briefs of counsel and said argument, we hereby dispense with further briefs, record and oral argument in Case No. 43,649. We have jurisdiction pursuant to Art. V, Sec. 3(b)(3), Florida Constitution, F.S.A.
The movant primarily questions denial by the Circuit Court of Volusia County of his motion to strike and suppress any and all evidence obtained in a Dade County authorized *45 wiretap during 1972, where such evidence related to crimes other than those enumerated in F.S. § 934.07, F.S.A.
The First District Court of Appeal phrased movant's thrust on two points, as follows:
Point one was stated as follows:
"Does a witness summoned before a Grand Jury to testify concerning wiretap interceptions, have the right to challenge the legality of the interception by way of a pre-indictment hearing on a motion to suppress, prior to being interrogated?"
Point two was stated as follows:
"Where evidence is obtained by a court authorized wiretap of a crime which is not specifically enumerated in the wiretap law, is such evidence admissible in a court of law and can such evidence be used to obtained additional evidence of the same crime by investigative methods other than a wiretap?"
The First District Court of Appeal decided against the movant[3] on the first point and therefore declined to rule on point two. Of course, a ruling on one point is inclusive of the other in this particular case.
Under consideration is F.S. Chapter 934, F.S.A., relating to Security of Communications.
F.S. § 934.06, F.S.A., provides as follows:
"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter." (Emphasis supplied.)
F.S. § 934.09(9)(a), F.S.A., provides as follows:
"Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that:
"1. The communication was unlawfully intercepted;
"2. The order of authorization or approval under which it was intercepted is insufficient on its face; or
"3. The interception was not made in conformity with the order of authorization or approval." (Emphasis supplied.)
The First District Court recognized that in a wiretap case under F.S. § 934.06, F.S.A., supra, the disclosure of any information derived therefrom in violation of Chapter 934 should not be received by a grand jury, but, nevertheless, concluded that the movant had no standing as a witness (called to testify before the grand jury) to move to suppress such violative information because F.S. § 934.09(9)(a), F.S.A., supra, did not include the words "grand jury". This conclusion was arrived at by analogy to the United States Supreme Court case of Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179, decided in 1972. Gelbard was decided upon the Supreme Court's "interpretation of intent" of the United States Congress' Omnibus Crime Control and Safe Streets Act.
The District Court's conclusion, however, overlooks several factors. First, our *46 Legislature in 1969 could have simply through inadvertence failed to include the words "grand jury" in F.S. § 934.09(9)(a), F.S.A., supra. Second, the Legislature could have deemed it not necessary to use "grand jury" since it granted the right to move to suppress to any aggrieved person in a wiretap case in "any ... proceeding in or before any court. . .", which in turn then depends upon this State's interpretation of such language.
Clearly, the movant was an "aggrieved person" within the definition of F.S. Chapter 934, F.S.A., which a casual review will reveal. Next follows the question: was the movant (aggrieved person) involved in any proceeding in or before any court? Answer: yes.
As long ago as 1900, this Court, in defining the nature of a grand jury proceeding in Craft v. State, 42 Fla. 567, 29 So. 418, 419, stated:
"We think that an investigation of a crime by a grand jury that is within its jurisdiction to investigate and to indict for is a judicial proceeding in a court of justice ... under our judicial system a grand jury is an appendage or adjunct to the circuit court..." (Emphasis supplied)
Next, in State ex rel. Guyton v. Croom, 48 Fla. 176, 37 So. 303, 306 (1904), our Court held:
"... under our judicial system a grand jury is an appendage or adjunct to the circuit court..."
Then, in Rivers v. State, 121 Fla. 887, 164 So. 544, 545, our Court further stated:
"... An investigation by a grand jury of a crime that is within its jurisdiction to investigate and to indict for is a judicial proceeding in a court of justice." (Emphasis supplied.)
For a fair and apt discussion of the function and nature of our grand jury system and its blood kinship to being a proceeding in or before a court, 15 Fla.Jur., Grand Jury, Secs. 2 and 3, states in pertinent part:
"... A grand jury is an agency of the state, and a part of its judicial system. It has been variously referred to as a coordinate branch of the judiciary, and as an arm, appendage, or adjunct of the circuit court. In essence, it is a creature of the court since it cannot constitute itself on its own initiative but can act as a grand jury, in accordance with the law, only when summoned, impaneled, and convened by the court... ."
"... Proceedings before a grand jury are characterized as judicial, although grand jury investigations are always ex parte, and the person investigated is never accorded the right to be heard before the grand jury ... The grand jury is designed as a means not only of bringing to trial persons accused of public offenses on just grounds, but also of protecting citizens against unfounded accusations, whether they come from the government or are prompted by partisan passion or private enmity.
"In Florida, the grand jury system is derived from the common law, but has been modified by statute."
Thus, we conclude that the movant in this case was an aggrieved party involved in a proceeding before a court and has status to move to suppress wiretap information violative of F.S. Chapter 934, F.S.A.
It may be argued that such a conclusion may impede justice by forestalling unencumbered inquiry; however, of equal weight to all people is the guarantee of the Fourth Amendment against the invasion of privacy. If this guarantee is enforced, it tends to destroy any excitement to commit an act designed to invade or destroy the right of privacy.
Notwithstanding our conclusion on this singular issue, another point remains *47 patently clear. If as per the District Court of Appeal's conclusion, F.S. § 934.06, F.S.A., supra, that no unauthorized wiretap information is to be received by a grand jury, but F.S. § 934.09(9)(a), F.S.A., supra, does not permit an aggrieved person to question it prior to indictment or information, then who supervises the plain intent and meaning of F.S. § 934.06, F.S.A., supra, to prohibit unauthorized wiretap information going to the grand jury? Obviously, someone must have that responsibility. Otherwise, a dichotomy exists and our system of justice would be operating in a vacuum, unleashed and subjecting persons, and families, to embarrassment, humiliation and possible loss of jobs and reputations arising through unwarranted indictments or informations. Clearly, this responsibility lies with the officers of our courts, i.e. the judges and prosecutors primarily (because of the ex parte nature of a grand jury proceeding). Such should be and is the result sub judice which is as clear as an electrical impulse flashed to the eye.
Now, therefore, we can turn to the primary focal point in issue. The movant wishes to suppress or preclude presentment to the grand jury of any wiretap communication involving him or which could or might tend to involve him with any offense other than those specifically authorized under the wiretap statute by F.S. § 934.07, F.S.A. Is he entitled to this sanction or protection? Answer: yes.
That part of the Florida Statutes dealing with "Security of Communications", Chapter 934, Florida Statutes, F.S.A., and more particularly F.S. § 934.07, F.S.A., authorizing interception of wire or oral communications of persons, is a statutory exception to the constitutional (federal and state) right to privacy. Therefore, as an exception to a constitutional right it must be strictly construed and narrowly limited in application to the uses delineated by the Florida Legislature.
Apropos, it is noted that the State, in its brief filed with the First District Court of Appeal, conceded, "Petitioners accurately point out that the Florida wiretap statute is limited in its applicability to certain enumerated crimes."
Thus, in determining the use of the wiretaps in question we must first look to the scope and extent to which the statute, supra, authorizes them. In so doing, we find the statute limited to the "investigation of the offense" when "such interception may provide or has provided evidence of the commission of the offense of", the following:
"Murder,
"Gambling (when the same is of an organized nature or carried on as a conspiracy in violation of the laws of this State),
Robbery,
Burglary,
Grand Larceny,
Prostitution,
Criminal Usury,
Abortion,
Bribery,
Extortion,
Dealing in narcotic drugs or other dangerous drugs,
Or any conspiracy to commit any violation of the laws of this State relating to the crimes specifically enumerated above." (F.S. 934.07)
Obviously, the statute sets the stage for the permissive use of authorized wiretaps, which otherwise are impermissible in use, directly or indirectly. See Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170, which suppressed attempts to compel the petitioner in that case to testify before a grand jury, and in so doing held:
"Answers to the questions asked by the grand jury would have furnished a link *48 in the chain of evidence. . . under such circumstances, the Constitution gives a witness the privilege of remaining silent." (Emphasis supplied)
Accordingly, as it is clear that the "wiretap" statute abridges the right of privacy, it is also clear that it must be construed strictly and limited in application according to the dictates of its language. Thus, any "investigation of the offense" or any information derived from the wiretaps in question which may directly or indirectly "provide ... evidence of the commission of the offense ..." relative to any person or persons is limited directly and indirectly to only those offenses specifically set forth in the authorizing statute and enumerated above.
Our conclusion on this point finds absolute comfort in the equally "exclusive" rationale of State v. Sullivan, 37 So.2d 907 (Fla. 1948), treating the immunity statute, wherein our Court decided that immunity could only be granted for those specifically enumerated proceedings. Therein, we stated:
"There is no language in Section 932.29, F.S.A., that would authorize us to extends its terms to other prosecutions than the ones enumerated in the act and we are cited to no other statute that proposes to do so. We are told that no such power existed under the common law and since the legislature has not seen fit to speak on the matter, we are driven to the conclusion that no such statutory immunity exists."
Therefore, the petition for writ of certiorari in Case No. 43,649 is granted and the decision of the First District Court of Appeal is quashed, and said cause is remanded for further proceedings consistent herewith. Inasmuch as the issues treated in the certiorari proceeding are the same as those raised in the direct appeal, Case No. 43,644, it is unnecessary to consider the same, and accordingly said appeal is therefore dismissed.
It is so ordered.
ROBERTS, ERVIN, McCAIN and DEKLE, JJ., concur.
BOYD, J., dissents with opinion.
CARLTON, C.J., dissents and concurs with BOYD, J.
BOYD, Justice (dissenting):
I must dissent.
This cause is before us, both on direct appeal, and on petition for writ of certiorari. A motion to dismiss the appeal has been filed by appellee. The motion to dismiss the appeal should be granted, and the petition for writ of certiorari should be denied. The decision of the majority, to hear this cause on the merits, is, as will be shown below, contrary to: 1) the Florida Constitution; 2) the Florida Statutes; 3) Florida case law; and, 4) United States Supreme Court case law, and is in violation of the most basic principles of this Court's jurisdiction.
In the direct appeal, movant sought review of the following Order by the Honorable James T. Nelson, Chief Judge of the Seventh Judicial Circuit:
"THE ABOVE CAUSE having come on to be heard before me this 22d day of March, A.D. 1973, upon the motion of FRANK COBO, for an order to strike and suppress any and all evidence obtained in Dade County, Florida, through the use of Court authorized wiretaps, during the period July 26, 1972, to August 25, 1972, and from September 4, 1972, to September 18, 1972, where such evidence relates to crimes other than the crimes specifically enumerated in Section 934.07, Florida Statutes, and the Court upon the consideration of the motion, argument of counsel and being duly advised in the premises, it is, therefore
"ORDERED AND ADJUDGED AS FOLLOWS:
"1. That Movant's Motion to Strike and Suppress, be, and the same is hereby denied."
*49 The appellate jurisdiction of this Court is limited to that specifically enumerated in Article V, Section 3(b)(1), of the Constitution of the State of Florida:
"The supreme court:
"Shall hear appeals from final judgments of trial courts imposing the death penalty and from orders of trial courts and decisions of district courts of appeal initially and directly passing on the validity of a state statute or a federal statute or treaty, or construing a provision of the state or federal constitution."
It is clear that the foregoing order of Chief Judge Nelson simply does not fall within the confines of Article V, Section 3(b)(1)'s specifically enumerated classes of cases we may hear on direct appeal. For these reasons, therefore, the appeal must be dismissed. See Ogle v. Pepin;[1] P.C. Lissenden Co. v. Board of County Commissioners;[2] Armstrong v. City of Tampa;[3] State v. Moss;[4] State ex rel. Sentinel Star Company v. Lambeth;[5] Green v. Peters.[6]
By his petition for writ of certiorari, movant sought review of a per curiam opinion of the First District, entered upon a petition for writ of certiorari to the Circuit Court, Volusia County.[7] The pertinent facts, as reported by the First District, were as follows:
"Petitioners allege that in the months of July and September, during 1972, the Honorable James C. Adkins, Jr., one of the Justices of the Supreme Court of Florida, entered orders authorizing wiretaps on a telephone located in Dade County, Florida, which orders restricted the police agencies conducting the wiretap to obtain evidence of bribery and conspiracy to commit bribery. Pursuant to an order of transfer, the Grand Jury of Volusia County, Florida, began conducting an investigation utilizing evidence obtained as a result of the authorized wiretaps. Petitioners were subpoenaed by the grand jury as witnesses, and at this stage of the proceeding they filed in the Circuit Court of Volusia County motions to suppress evidence. The subject motions alleged that petitioners were `aggrieved' persons within the purview of Section 934.09, Florida Statutes; that the orders of authorization and approval under which the wire and oral communications were intercepted were not properly issued; the communications were unlawfully intercepted in that they were not in conformity with the Constitutions of the United States of America and of the State of Florida; that all of the wire and oral communications were not intercepted in conformity with the orders of authorization and approval in that the search being conducted was general in nature seeking information for any and all types of alleged potential crimes and was not being conducted for fruits of a crime heretofore committed; insufficient probable cause existed for the orders of authorization and approval in that the affidavits on their face were insufficient; the applications fail to demonstrate the necessity and need for wire or oral communication interceptions; and that Chapter 934 of the Florida Statutes is unconstitutional. In a separate action, which was consolidated by order of this court, petitioner Cobo sought to suppress any evidence of a crime not specifically enumerated in the wiretap law obtained by a court-authorized wiretap from being considered by a grand jury."[8]

*50 * * * * * *
"Petitioners Cobo, Azrack, Vine Williams, and Annie Williams, in Case No. T-79, pose the following point:
`Does a witness summoned before a Grand Jury to testify concerning wiretap interceptions, have the right to challenge the legality of the interception by way of a pre-indictment hearing on a motion to suppress, prior to being interrogated?'
"Petitioner Cobo, in Case No. T-80, raises an additional point:
`Where evidence is obtained by a court authorized wiretap of a crime which is not specifically enumerated in the wiretap law, is such evidence admissible in a court of law and can such evidence be used to obtain additional evidence of the same crime by investigative methods other than a wiretap?'"[9]
In its preliminary opinion, the First District held as follows:
"The court has now had an opportunity to consider the pleadings, supporting documents, and briefs filed by the parties and is of the opinion that the orders challenged by petitioners herein which denied their motions to strike and to suppress the intercepted oral and wire communications, the validity of which the petitioners seek to challenge, were properly rendered and are free from error. We base our conclusion upon the conviction that under the statute here involved, F.S., Chapter 934, petitioners as witnesses summoned to appear and testify before the grand jury have no legal standing to challenge the legality of the court-authorized telephonic communications involved herein by a motion to suppress such intercepted communications at this stage of the proceeding."[10]
Expanding upon this holding in its formal opinion, the First District further explained:
"Our disposition of this matter turns upon an interpretation of two sections of Chapter 934, Florida Statutes, relating to Security of Communications. The evidentiary prohibition section of the act in question provides as follows:
`Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter.' [Section 934.06]
"The suppression section of the act provides in pertinent part:
`Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that:
`1. The communication was unlawfully intercepted;
`2. The order of authorization or approval under which it was intercepted is insufficient on its face; or
`3. The interception was not made in conformity with the order of authorization or approval.
[Section 934.09(9)(a)]
"A careful examination of the two foregoing sections of the statute makes it clearly apparent that no intercepted wire or oral communication illegally obtained contrary to the provisions of the act may be received in evidence in any trial, hearing, or other proceeding in or before any *51 court, grand jury, department, officer, regulatory body, legislative committee, or other authority of the state. It is equally apparent, however, that the suppression section which sets up the procedure by which illegally obtained wire or oral communications may be suppressed specifically designates the forums in which such a motion to suppress may be filed and brought on for hearing. The forums enumerated in this section of the statute include only courts, departments, officers, agencies, regulatory bodies, and other authorities of the state but omits therefrom the grand jury as one of the forums in which such a motion may be filed and heard. This omission is of critical importance in determining whether the suppression statute was intended to apply to proceedings before grand juries as distinguished from other inquisitorial bodies whose function is to adjudicate civil and criminal matters properly brought within their respective jurisdictions."[11]
The certiorari jurisdiction of this Court is limited to that specifically enumerated in Article V, Section 3(b)(3), of the Constitution of the State of Florida:
"The supreme court:
"May review by certiorari any decision of a district court of appeal that affects a class of constitutional or state officers, that passes upon a question certified by a district court of appeal to be of great public interest, or that is in direct conflict with a decision of any district court of appeal or of the supreme court on the same question of law, and any interlocutory order passing upon a matter which upon final judgment would be directly appealable to the supreme court; and may issue writs of certiorari to commissions established by general law having statewide jurisdiction."
Movant alleges conflict between the decision sought to be reviewed and State ex rel. Benemovsky v. Sullivan,[12] and State ex rel. Kennedy v. Lee.[13] In Benemovsky, we held that a statute immunizing from prosecution those who gave testimony in an investigation of charges for bribery, burglary, larceny, gaming, or any of the statutes against the illegal sale of intoxicating liquors, could not, by judicial construction, be extended to cover prosecution for criminal Communism. Clearly, the most that can be said of Benemovsky vis-a-vis the instant case is that the two cases are somewhat analogous  but, just as clearly, they are not in constitutionally-requisite direct conflict. Additionally, it must be noted that Benemovsky arose upon a habeas corpus proceeding brought by a relator who had been imprisoned for contempt for refusal to answer questions propounded by the county solicitor. Movant's clear lack of standing, as properly noted in the foregoing portions of the First District's opinion, serves as another fatally distinguishing factor between the instant case and Benemovsky.[14]
As to the Kennedy case, movant alleges that the following language, appearing in Justice Roberts' specially concurring opinion, conflicts with the decision of the First District, sub judice:
"The right of two citizens to have a confidential conversation is one of our most precious rights and any invasion of which should be done with great caution under extreme circumstances in the interest of the public welfare."
*52 In Kennedy, of course, this Court simply held that the State Constitution did not preclude any Justice of this Court from issuing an order for the interception of wire and oral communications, pursuant to Sections 934.02 and 934.09, Florida Statutes, 1971, F.S.A. The above-quoted language from Justice Roberts' opinion was but an accurate restatement of a generally-accepted principle of the right of privacy. It is, once again, apparent that the holdings of this Court in Kennedy, and of the First District in the instant case, are not in constitutionally-requisite direct conflict.
It is clear that the opinion of the District Court of Appeal, First District, simply does not fall within the confines of Article V, Section 3(b)(3)'s specifically enumerated classes of cases we may hear on writ of certiorari. The petition for writ of certiorari, therefore, must be denied. See Kyle v. Kyle;[15] Nielsen v. City of Sarasota;[16] Ansin v. Thurston.[17]
Parenthetically, I must admit that the majority opinion in this cause may well become a landmark decision. The majority, in support of its position, has failed to cite a single case where the use of pre-indictment motions to suppress has been allowed  as the majority has allowed in this case. Perhaps, this is because there is absolutely no authority  federal or state  that has ever allowed such motions. The issue here, of course, is standing, and I believe that what is proper standing in this cause has been accurately described by the First District, and I would adopt the portion of the First District's opinion dealing with that question.[18] The First District, unlike the majority, chose not to ignore the case that must be considered the controlling precedent in this area, the United States Supreme Court's 1972 case of Gelbard v. United States.[19]Gelbard was the latest case to interpret a similar provision found within the Omnibus Crime Control and Safe Streets Act of 1968, adopted by the Congress of the United States, and the Act upon which the Florida Security of Communications Act is based. The First District noted:
"The Florida Security of Communications Act, F.S., Chapter 934, F.S.A., is in all substantial respects identical in its language to the Omnibus Crime Control and Safe Streets Act of 1968 adopted by the Congress of the United States. We find no decisions by Florida courts construing the salient provisions of our statute and thus we look to the federal courts for the legislative history of the federal statute of which ours is a counterpart. The leading and most recent decision construing the federal act is that of Gelbard v. United States. In Gelbard, the Supreme Court of the United States reviewed decisions rendered by the Circuit Courts of Appeal of the Third and Ninth Circuits. The appeals concerned witnesses who had appeared before grand juries but refused to answer questions propounded to them on the ground that the information forming the basis of the interrogation was obtained as the result of illegal wiretapping and electronic surveillance. In both instances the witnesses had been adjudged in contempt of court for disobeying orders by refusing to give their testimony before the grand juries to which they were summoned. The Supreme Court in its decision disposing of the appeal stated that the narrow question to be decided was whether witnesses were privileged to invoke the evidentiary prohibition section of the federal act, 18 U.S.C. § 2515 (the counterpart of our statute, F.S. § 934.06, F.S.A.), as a defense to the contempt charges of which they had been adjudged guilty. The Supreme Court held *53 that in view of the evidentiary prohibition section of the federal act which prohibits grand juries from receiving intercepted wire communications illegally obtained contrary to the provisions of the act, the witnesses before the grand jury could not be held in contempt of court for refusing to answer questions propounded to them based upon the illegally obtained wire communications. In so doing, however, the Supreme Court made clear the distinction between the right of a witness to refuse to answer questions put to him based upon illegally intercepted wire communications without subjecting himself to punishment for contempt, and the right of the same witness to file and be heard on a motion to suppress the illegally intercepted communication prior to its consideration by the grand jury. In the course of its opinion, the Supreme Court relied in large part for its interpretation of the act upon the report of the Senate Judiciary Committee which drafted and proposed the act for adoption by Congress. In commenting upon the Senate report, the Supreme Court said:
"`... The congressional concern with the applicability of § 2518(10)(a) in grand jury proceedings, so far as it is discernible from the Senate report, was apparently that defendants and potential defendants might be able to utilize suppression motions to impede the issuance of indictments: "Normally, there is no limitation on the character of evidence that may be presented to a grand jury, which is enforcible by an individual. [United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1965).] There is no intent to change this general rule." S.Rep.No. 1097, 90th Cong, 2d Sess., 106 (1968). The "general rule," as illustrated in Blue, is that a defendant is not entitled to have his indictment dismissed before trial simply because the Government "acquire[d] incriminating evidence in violating of the [law]," even if the "tainted evidence was presented to the grand jury." 384 U.S. at 255 and n. 3, 86 S.Ct. 1416 [16 L.Ed.2d at 514]; see Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). But that rule has nothing whatever to do with the situation of a grand jury witness who has refused to testify and attempts to defend a subsequent charge of contempt. Hence, we cannot agree that the Senate report expressed the view that grand jury witness would be foreclosed from raising the § 2515 defense in a contempt proceeding under § 1826(a).'"
"In highlighting the significance of omitting from the suppression section of the federal act proceedings before grand juries as a forum in which a motion to suppress might lie, the Supreme Court said:
"`"Because no person is a party as such to a grand jury proceeding, the provision [Title III, § 2518(10)(a)] does not envision the making of a motion to suppress in the context of such a proceeding itself... . It is the intent of the provision only that when a motion to suppress is granted in another context, its scope may include use in a future grand jury proceeding." ...'
"In pointing out that the suppression section of the act is exclusive with respect to the forums in which a motion to suppress an illegally obtained wire communication may be made and heard, the Supreme Court said:
"`... Although the Government points to statements in the Senate report to the effect that § 2518(10)(a) "limits" § 2515, we read those statements to mean that suppression motions, as a method of enforcing the prohibition of § 2515, must be made in accordance with the restrictions upon forums, procedures, and grounds specified in § 2518 (10)(a).'"

*54 "The opinion of Justice White concurring with the majority clearly points out the impropriety of granting a witness before the grand jury the right to a suppression hearing before being required to give his testimony when he said:

"`Where the Government produces a court order for the interception, however, and the witness nevertheless demands a full blown suppression hearing to determine the legality of the order, there may be room for striking a different accommodation between the due functioning of the grand jury system and the federal wiretap statute. Suppression hearings in these circumstances would result in protracted interruption of grand jury proceedings. At the same time prosecutors and other officers who have been granted and relied on a court order for the interception would be subject to no liability under the statute, whether the order is valid or not; and in any event, the deterrent value of excluding the evidence will be marginal at best... .'"

"From the foregoing it appears self-evident that in construing the federal Omnibus Crime and Safe Streets Act, the Supreme Court of the United States in Gelbard has clearly held that a witness before a grand jury may not be heard by motion to suppress to challenge the legality of an intercepted oral or wire communication which has been produced to the grand jury for its consideration as part of its investigation. This is so even though the court held that the same witness has the right to refuse to answer questions propounded to him based upon illegally obtained oral or wire communications without subjecting himself to conviction for contempt of court. It is our view that the interpretation placed by the Supreme Court on the federal act is sound and applicable in all respects to the Florida statute of which the federal act is a counterpart. Having reached this conclusion, we find and so hold the trial court in the cases sub judice did not err in denying petitioners' motions to suppress intercepted wire communications which petitioners contend were illegally obtained. Such motions will properly lie at a later stage in the proceeding if and when indictments charging commissions of a crime have been presented and the aggrieved person then afforded his day in court.

"It is emphasized that the decision of this court has been reached solely upon the procedural question of whether a witness subpoenaed to appear before a grand jury may avail himself, prior to his appearance, of the right to file a motion to suppress matters which may be inquired into by the grand jury during its interrogation of the potential witness. This court has not reached or decided any of the merits of petitioners' allegations in their respective petitions for writ of certiorari."[20]
In response to this overwhelming weight of authority, the majority, however, replies:
"The District Court's conclusion, however, overlooks several factors. First, our Legislature in 1969 could have simply through inadvertance failed to include the words `grand jury' in F.S. § 934.09(9)(a), F.S.A. supra. Second, the Legislature could have deemed it not necessary to use `grand jury' since it granted the right to move to suppress to any aggrieved person in a wiretap case in `any ... proceeding in or before any court ...', which in turn then depends upon this State's interpretation of such language.

*55 "Clearly, the movant was an `aggrieved person' within the definition of F.S. Chapter 934, F.S.A., which a casual review will reveal. Next follows the question: was the movant (aggrieved person) involved in any proceeding in or before any court? Answer: yes."
Briefly, to assume that the Legislature "could have simply through inadvertance failed to include the words `grand jury'" in the statute, flies in the face of every former pronouncement by this Court on the limits of judicial construction. Where the legislative intent as evidenced by a statute is plain and unambiguous, then there is no necessity for any construction or interpretation of the statute, and the courts need only give effect to the plain meaning of its terms. Alligood v. Florida Real Estate Commission.[21] This Court, in Van Pelt v. Hilliard,[22] held:
"The Legislature must be understood to mean what it has plainly expressed, and this excludes construction. The legislative intent being plainly expressed, so that the act read by itself or in connection with other statutes pertaining to the same subject is clear, certain, and unambiguous, the courts have only the simple and obvious duty to enforce the law according to its terms. Cases cannot be included or excluded merely because there is intrinsically no reason against it. Even where a court is convinced that the Legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity. If a legislative enactment violates no constitutional provision or principle, it must be deemed its own sufficient and conclusive evidence of the justice, propriety, and policy of its passage. Courts have then no power to set it aside or evade its operation by forced and unreasonable construction. If it has been passed improvidently the responsibility is with the Legislature and not the courts. Whether the law be expressed in general or limited terms, the Legislature should be held to mean what they have plainly expressed, and consequently no room is left for construction... ."[23]
Simply stated, if it is not in the statute, it is just not there.
As to the majority's argument that "the Legislature could have deemed it not necessary to use `grand jury' since it granted the right to move to suppress to any aggrieved person in a wiretap case in `any ... proceeding in or before any court ...', which in turn then depends upon this State's interpretation of such language," it certainly seems strange that the majority would choose to bottom its conclusion upon three very old cases, none of which concerned pre-indictment motions to suppress,[24] instead of relying upon the one case in the country dealing with essentially the same statute, and with *56 exactly the same question, that of pre-indictment motions to suppress. The case, of course, was Gelbard v. United States, supra, decided by the Supreme Court of the United States in 1972, on all fours with the case sub judice, and reaching a result directly opposite to that reached by the majority today.[25]
If there was ever any question that the position of the majority in the instant case was incorrect, that question has certainly been erased by the recent case of the Supreme Court of the United States, United States v. Calandra,[26] which held that a witness summoned to appear and testify before a Grand Jury may not refuse to answer questions on the ground that they are based on evidence obtained from an unlawful search and seizure  because the exclusionary rule is not applicable to Grand Jury proceedings.
I respectfully dissent.
CARLTON C.J., concurs.
NOTES
[1] Case No. 43,644.
[2] Case No. 43,649.
[3] In re: Grand Jury Investigation Concerning Evidence Obtained by Court Authorized Wiretaps, 276 So.2d 234 (Fla.App.1st 1973), issued April 6, 1973, wherein the First District noted: "A formal opinion setting forth in detail the issues, findings, conclusions, and the authorities relied upon by the court will be filed at an early date." Said formal opinion was duly issued on May 1, 1973, and is reported at 276 So.2d 235.
[1] 273 So.2d 391 (Fla. 1973).
[2] 116 So.2d 632 (Fla. 1959).
[3] 106 So.2d 407 (Fla. 1958).
[4] 206 So.2d 692 (Fla.App.2d 1968).
[5] 192 So.2d 518 (Fla.App. 4th 1966).
[6] 140 So.2d 601 (Fla.App.2d 1962).
[7] In re: Grand Jury Investigation Concerning Evidence Obtained By Court Authorized Wiretaps, 276 So.2d 234 (Fla.App. 1st 1973).
[8] 276 So.2d at 235-236.
[9] Id. at 236.
[10] Id. at 235. (Emphasis supplied.)
[11] Id. at 236-237. (Emphasis supplied.)
[12] 37 So.2d 907 (Fla. 1948).
[13] 274 So.2d 881 (Fla. 1973).
[14] Movant's clear lack of standing also serves as the fatally distinguishing factor between the instant case and those with which the majority finds "conflict": Craft v. State, 42 Fla. 567, 29 So. 418 (1900); State ex rel. Guyton v. Croom, 48 Fla. 176, 37 So. 303 (1904); and, Rivers v. State, 121 Fla. 887, 164 So. 544 (1935). In Craft and Rivers, supra, indictments had already been handed down against the defendants and so there was no question of standing. There was no question of standing at all in Guyton, supra, because Guyton wasn't even a criminal case.
[15] 139 So.2d 885 (Fla. 1962).
[16] 117 So.2d 731 (Fla. 1960).
[17] 101 So.2d 808 (Fla. 1958).
[18] See notes 10 and 11, supra.
[19] 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).
[20] 276 So.2d at 237-239 (Footnotes omitted.) (Emphasis supplied.) See also United States v. Blue, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).
[21] 156 So.2d 705 (Fla.App.2nd 1963). See also State ex rel. Green v. City of Pensacola, 126 So.2d 566 (Fla. 1961); State ex rel. Florida Jai Alai, Inc. v. State Racing Commission, 112 So.2d 825 (Fla. 1959); Ervin v. Capital Weekly Post, Inc., 97 So.2d 464 (Fla. 1957); Gough v. State ex rel. Sauls, 55 So.2d 111 (Fla. 1951); Ross v. Gore, 48 So.2d 412 (Fla. 1950); Smith v. Ryan, 39 So.2d 281 (Fla. 1949); Miami Bridge Co. v. Railroad Commission, 155 Fla. 366, 20 So.2d 356, cert. denied 325 U.S. 867, 65 S.Ct. 1405, 89 L.Ed. 1987 (1945); Clark v. Kreidt, 145 Fla. 1, 199 So. 333 (1940); State ex rel. Southern Roller Derbies v. Woods, 145 Fla. 296, 199 So. 262 (1940); Richardson v. City of Miami, 144 Fla. 294, 198 So. 51 (1940); Maryland Casualty Co. v. Sutherland, 125 Fla. 282, 169 So. 679 (1936); Taylor v. State, 117 Fla. 706, 158 So. 437 (1934); A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931); Osborne v. Simpson, 94 Fla. 793, 114 So. 543 (1927); State v. Beardsley, 84 Fla. 109, 94 So. 660 (1922); State v. Burr, 79 Fla. 290, 84 So. 61 (1920); Fine v. Moran, 74 Fla. 417, 77 So. 533 (1917); Curry v. Lehman, 55 Fla. 847, 47 So. 18 (1908); Adams v. Dickinson, 264 So.2d 17 (Fla.App.1st 1972); Owen v. Cheney, 238 So.2d 650 (Fla.App.2nd 1970); City of Sarasota v. Burch, 192 So.2d 9 (Fla.App.2nd 1966), cert. quashed 200 So.2d 177 (Fla. 1967); Biddle v. State Beverage Dept., 187 So.2d 65 (Fla.App.4th 1966); Platt v. Lanier, 127 So.2d 912 (Fla.App.2nd 1961).
[22] 75 Fla. 792, 78 So. 693 (1918).
[23] 78 So. at 694-695.
[24] See note 14, supra.
[25] See note 20, supra.
[26] ___ U.S. ___, 94 S.Ct. 613, ___ L.Ed.2d ___ (Jan. 8, 1974).