366 So.2d 71 (1978)
STATE of Florida, Appellant,
v.
Carl AURILIO, Eleanore Cinquina, Alfred Campagnuolo, and Joseph Di Pietro, Appellees.
No. 77-36.
District Court of Appeal of Florida, Fourth District.
December 20, 1978.
Rehearing Denied January 31, 1979.
*73 Robert L. Shevin, Atty. Gen., Tallahassee, and Marsha G. Madorsky, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, Larry S. Weaver and Marc E. Kirk, Asst. Public Defenders, West Palm Beach, for appellee Joseph Di Pietro.
Robert S. McCain of McCain & Saccocio, Fort Lauderdale, for appellee Alfred Campagnuolo.
Robert L. Saylor of Saylor & Ingalsbe, North Palm Beach, for appellee Eleanore Cinquina.
ANSTEAD, Judge.
This is an appeal challenging an order suppressing evidence obtained from wiretaps on various telephones used by the appellees.
By successive applications, authorizations to intercept the communications of the appellees, starting with Joseph Di Pietro, were secured over a period running from May 12, 1975 to June 25, 1975. Subsequently, appellees were charged in several counts with bookmaking and maintaining a gambling house. The appellees then filed motions to suppress which were granted in an order that found:
1. The electronic surveillance placed on the telephone line of Joseph Di Pietro was maintained beyond the time that the authorized objective was reached by the State of Florida.
2. Several of the reports required to be filed by Section 934.09(6), Florida Statutes, were not filed by the State of Florida.
3. Each of the applications submitted to the Chief Justice of the Florida Supreme Court contained sufficient facts to establish probable cause that the offenses stated were being or were about to be committed by the individuals named and that the telephone lines named were being used to commit the offenses. However, the applications do not contain a full and complete statement of the facts concerning all previous applications involving the persons or telephone lines specified in the applications that were known to the persons making the applications.
4. Subsequent applications for authority to intercept failed to identify Defendants that had been previously intercepted as persons whose communications were going to be intercepted by such subsequent authorization. The agents of the State of Florida knew that the Defendants previously intercepted would be intercepted by the electronic surveillance resulting from the new authorizations.
5. The maximum punishment for conviction of bookmaking in the State of Florida is one year. Authorization for electronic surveillance of telephone lines is limited by Federal law to investigation of crimes punishable by imprisonment for more than one year.
The state contends that the trial court either erred in its findings set out above, or erred in concluding that suppression was necessary as a result of such findings.
Wiretaps are authorized in Florida by Chapter 934, Florida Statutes (1975). This statute contains detailed provisions relating to the contents of applications for wiretaps, standards for issuance of wiretap authorizations, conduct of the taps, use of evidence derived from the taps, and grounds for suppression of wiretap evidence. The Florida Supreme Court has held that the statute is an exception to the federal and state constitutional right to privacy and must be strictly construed and narrowly limited in its application by the specific provisions set out by the legislature. In Re Grand Jury Investigation, 287 So.2d 43 (Fla. 1973). Indeed, the statute itself recites *74 the legislature's findings of the need to protect the right of privacy while at the same time allowing necessary wiretaps as an aid to law enforcement. In addition, it must be noted that federal law has preempted the field of wiretaps, and any state law regulating the interception of wire communications must provide safeguards at least as stringent as those set out in the federal statute. State v. McGillicuddy, 342 So.2d 567 (Fla. 2d DCA 1977). Chapter 934 is, in fact, almost identical to its federal counterpart, Wire Interception and Interception of Oral Communications, 18 U.S.C.A. §§ 2510-2520 (1970).
With regard to the first finding concerning the Di Pietro tap the state contends that the tap was not maintained beyond the time the authorized objective was realized and further maintains that even if it was, only suppression of evidence obtained after reaching the objective would be required. The authorization order for the Di Pietro tap authorized the interception of wire and oral communications between Di Pietro and others
... consisting of the taking or receiving of bets or wagers upon the results of trials, or contests of skill, speed, power or endurance of man, beast, fowl or motor vehicle.
The only limitation as to time provided:
The period of time under which interception is authorized is not to exceed 30 (thirty) days from the date of this ORDER, and said interception pursuant to this ORDER shall not automatically terminate when the above described communications have first been obtained, but such interception shall be terminated upon attainment of the authorized objectives, or in any event 30 (thirty) days.
The application alleged the existence of a conspiracy to violate the Florida laws relating to bookmaking and gambling in an organized manner. The purpose of the wiretap, as stated in the application, was to determine the
... existence of these unknown persons who are part of this conspiracy, and to obtain additional evidence against JOSEPH PATRICK DI PIETRO a/k/a PAT.
The Di Pietro tap commenced on May 12 and terminated on May 25. Appellee, Di Pietro, contends that the state knew the identity of the conspirators involved with Di Pietro even before the tap was started and in any case learned all of their identities by May 17. There was evidence that the applicant for the wiretaps knew the names of all of the appellees in connection with previous gambling investigations. However, there is no evidence that the applicant had already secured evidence that these individuals and Di Pietro were co-conspirators in an illegal gambling operation.
The Di Pietro tap was authorized for thirty days. It was terminated after thirteen days. No "authorized objectives" were actually set out in the order, and we do not believe the authorization was violated even if restricted to the objectives set out in the application. The applicant testified that he terminated the Di Pietro tap after the information he obtained became "redundant", since the same people were detected placing calls to or from the Di Pietro telephone. We can see no violation of the terms of the authorization order. In addition, suppression of all wiretap evidence under circumstances where the tap is continued beyond the authorized objective is only mandated where the procedural requirements to minimize interception are blatantly ignored. Rodriguez v. State, 297 So.2d 15 (Fla. 1974). The trial court specifically found that the police official involved herein acted in good faith. There is no evidence or finding that the official blatantly ignored the requirements in the authorization order for terminating the taps and hence minimizing the interception of Di Pietro's line.
Similarly, there is no finding or evidence that the requirement for oral reports contained in the authorization order was "blatantly ignored" thereby mandating total suppression of all the wiretaps. Rodriguez, supra. It would appear that the provision was made for periodic reporting *75 in Chapter 934 in order to aid the authorizing court in determining whether or not interceptions are being made in accordance with the authorization order and whether or not the intercept is being minimized. The statute does not make the reports mandatory, and we believe that failure to comply with such reporting requirements will not mandate suppression absent a showing of express prejudice by the appellees. U.S. v. Canon, 404 F. Supp. 841 (N.D.Ala. 1975). No such showing was made here. In addition, the agent involved testified that he did make the required reports and there is no evidence in the record to the contrary. All of the applications in this case were made to the same judge and in each case information as to the prior wiretap was supplied. Hence, we cannot find, and appellees have not directed our attention to, any record support for the finding that the reports were not made in accordance with the authorizing judge's instructions.
The trial court's findings Nos. 3 and 4, supra, present more difficult questions. The trial court found that the applications did not contain a complete statement as to previous wiretap applications involving the persons whose communications were going to be intercepted or the identity of all such persons. This information is specifically required to be set forth in the application by Sections 934.09(1)(b) and (1)(e). The state does not challenge the correctness of the factual finding of non-compliance by the trial court, but rather argues that the failure to include this information does not require suppression.
Neither side has cited any Florida decisions on this point and our research likewise fails to disclose any state decisions. However, the federal decisions appear to support the state's position. U.S. v. Donovan, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977); U.S. v. Abramson, 553 F.2d 1164 (8th Cir.1977). Donovan held that the failure to name all persons known to the applicant, whose communications might be intercepted on a requested tap, did not require suppression, since the naming requirement was not one of the statutory prerequisites which must be established for a judge to issue a wiretap authorization. Likewise, the Eighth Circuit in Abramson found that the failure to disclose in an application the fact that a previous wiretap had been suppressed did not warrant suppression of the subsequent tap. The Donovan court explained its reasoning:
As to § 2518(1)(b)(iv), the issue is whether the identification in an intercept application of all those likely to be overheard in incriminating conversations plays a "substantive role" with respect to judicial authorization of intercept orders and consequently imposes a limitation on the use of intercept procedures. The statute provides that the issuing judge may approve an intercept application if he determines that normal investigative techniques have failed or are unlikely to succeed and there is probable cause to believe that: (i) an individual is engaged in criminal activity, (ii) particular communications concerning the offense will be obtained through interception; and (iii) the target facilities are being used in connection with the specified criminal activity. That determination is based on the "full and complete statement" of relevant facts supplied by law enforcement authorities. If, after evaluating the statutorily enumerated factors in light of the information contained in the application, the judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization. The intercept order may issue only if the issuing judge determines that the statutory factors are present, and the failure to name additional targets in no way detracts from the sufficiency of those factors.
As we have previously noted, Chapter 934 contains virtually the same provisions as the federal statute, so the Donovan and Abramson decisions are certainly persuasive. Three justices dissented in Donovan. The reasoning of a portion of the dissent seems especially applicable here:

*76 The Court's reasoning is doubly flawed. First, a judge is not required to issue a warrant if the prerequisites of § 2518(3) are satisfied; he may do so. Once he determines that the § 2518(3) requirements have been met, he still must decide whether the invasion of privacy by the proposed wiretap is justified under the circumstances. Second, what is at issue here is more than a simple list of names. Section 2518(1)(e) requires that the Government disclose to the court the history of all prior applications to intercept the communications of anyone named in a warrant application. A history of recent applications would at the least cause a judge to consider whether the application before him was an attempt to circumvent the restrictive rulings of another judge or to continue an unjustified invasion of privacy. The decision whether to issue the warrant would certainly be affected by such consideration. 97 S.Ct. at 678.
We have similar problems agreeing with the majority in Donovan. First, to agree, we must hold that the failure to comply with two important statutory requirements does not affect the validity of a wiretap application and an authorization issued pursuant thereto. Secondly, we cannot help but feel that a judge's decision to issue a wiretap authorization would be seriously affected by the disclosure of the details of previous wiretap applications. In other words, a judge may well deny an application knowing previous wiretaps have failed or that past applications have been denied or knowing other similar pertinent information. Thus, while we may agree that the failure to disclose the names of all potential persons to be intercepted may not play a "substantive role" in the authorization process, we cannot reach the same conclusion with respect to the failure to disclose information about prior wiretaps. Accordingly, we feel the trial judge was correct in granting the motions to suppress on grounds three and four.
The final ground for suppression was that the wiretap authorizations involved offenses outside those provided for under federal and state law. Section 934.07 limits wiretap authorizations to investigations of:
... murder, kidnapping, gambling (when the same is of an organized nature or carried on as a conspiracy in violation of the laws of the state), robbery, burglary, grand larceny, prostitution, criminal usury, abortion, bribery, extortion, dealing in narcotic drugs or other dangerous drugs, or any conspiracy to commit any violation of the laws of this state relating to the crimes specifically enumerated above.
This statute must be read in conjunction with the federal wiretap statute, 18 U.S.C. § 2516(2), which in part provides that authorization may be obtained in a situation
... when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses. (Emphasis supplied) 18 U.S.C. § 2516 (2).
Although the limiting phrase is ambiguous as to the crimes to which it refers, we feel it was the intent of Congress to permit wiretaps as to certain specifically enumerated offenses plus other offenses, not specifically enumerated but which are punishable by imprisonment for more than one year. Contra, People v. Amsden, 82 Misc.2d 91, 368 N.Y.S.2d 433 (1975). Appellant contends that the application alleged an investigation of a gambling offense of an organized nature which was carried out as a conspiracy as required by Section 934.07. Section 934.07 has no requirement that the offense involved be punishable by imprisonment for more than one year, and we do not believe the federal statute requires such a provision. We believe, from a review of the sworn application, that there was sufficient preliminary information furnished to warrant an intercept authorization to investigate *77 suspected gambling offenses as designated by Section 934.07 and as authorized by the federal statute.
Accordingly, since we find the trial court was correct in suppressing the wiretap evidence under findings Nos. 3 and 4, supra, the order of suppression is affirmed.
DAUKSCH and MOORE, JJ., concur.