862 F.2d 1482
 UNITED STATES of America, Plaintiff-Appellee,
v.
George BROWN, Jeff Anderson, Defendants-Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie BRADSHAW, a/k/a Brad, Hamin Abdul Muhammad, a/k/a
Anthony Keith Edwards, George Brown, Jeff
Anderson, Defendants-Appellants.
 Nos. 87-3507, 87-3684.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 11, 1989.
 
 Rosemary T. Cakmis, Asst. Federal Public Defender, Jacksonville, Fla., for Brown.
 Kevin Sanders, Jacksonville, Fla., for Anderson.
 M. Alan Ceballos, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.
 Stuart R. Mishkin, Miami, Fla., for Bradshaw.
 Neal L. Betancourt, Jacksonville, Fla., for Muhammad.
 Appeals from the United States District Court for the Middle District of Florida.
 Before ANDERSON and COX, Circuit Judges, and TUTTLE, Senior Circuit judge.
 TUTTLE, Senior Circuit Judge:
 
 
 1
 These are appeals by four of 18 individuals who were indicted for a number of illegal drug activities on May 6, 1987 in the Southern District of Florida. The indictment contained 70 counts. The other indicted persons either pled guilty or were fugitives at the time of the trial.
 
 I. COURSE OF PROCEEDINGS
 
 2
 As indicated in the indictments, the grand jury's finding of a true bill against the four appellants was based largely on telephone interceptions of telephones listed under the names of the several defendants.
 
 
 3
 Based on a transcript of the proceedings before the grand jury, the defendants moved for dismissal of the indictment on the ground that the prosecutor abused the grand jury's authority and subverted its proceedings into a pro forma adoption of the prosecutor's proffered bill of indictment. The trial court denied this motion.
 
 
 4
 Thereafter, defendants moved to suppress evidence contained on the tapes which resulted from electronic surveillance which had been authorized by a state court judge based on an application by state authorities.
 
 
 5
 The trial court also denied these motions to suppress.
 
 
 6
 Because of our disposition of the case, we consider it unnecessary to outline the other bases for the appellants' appeal here.
 
 II. ISSUES
 
 7
 1. Did the court err in declining to dismiss the indictment on the ground that prosecutorial abuse of the grand jury subverted the function of the grand jury and rendered it a prosecutorial rubber stamp?
 
 
 8
 2. Did the court err in failing to suppress the fruits of the electronic surveillance?
 
 III. DISCUSSION
 A. Dismissal of the Indictment
 
 9
 It is plain from a study of the transcript of the grand jury proceedings that a large part of the evidence given to the grand jury was in response to leading questions, which were answered by the sole witness who had conducted the electronics surveillance by his simple answer of "yes" or "that's right" or "that's correct." While not contending that it is improper for the government counsel to ask leading questions of the witnesses before the grand jury, defendants contend that the extent to which these indictments were based upon this type of questioning amounted to conduct so outrageous that it was fundamentally unfair and shocking to the universal sense of justice.
 
 
 10
 They also contend that substantially all of the agent's testimony before the grand jury was hearsay, thus compounding the alleged "prosecutorial misconduct."
 
 This Court has stated:
 
 11
 To amount to a constitutional violation the law enforcement techniques must be so outrageous that they are fundamentally unfair and " 'shocking to the universal sense of justice', mandated by the Due Process Clause of the Fifth Amendment." U.S. v. Russell, 411 U.S. at 432, 93 S.Ct. [1637] at 1643 [36 L.Ed.2d 366 (1973) ] (quoting Kinsella v. U.S. ex rel. Singleton, 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960)).
 
 
 12
 United States v. Mulherin, 710 F.2d 731, 735 (11th Cir.1983).
 
 
 13
 We recognize and understand the trial court's disapproval of the manner in which this case was presented to the grand jury, the court, in fact, likening the procedure to a "rubber stamp" by the grand jury. However, we are bound by the Supreme Court's decisions dealing with the extreme autonomy enjoyed by a grand jury as stated in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). There, the Court stated: "An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." 350 U.S. at 363, 76 S.Ct. at 409 (footnote omitted)
 
 
 14
 The Court also declined to exercise its power to supervise the administration of justice in federal courts by establishing a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. The Court stated:
 
 
 15
 No persuasive reasons are advanced for establishing such a rule. It would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but would add nothing to the assurance of a fair trial.
 
 
 16
 350 U.S. at 364, 76 S.Ct. at 409.
 
 
 17
 We should note here that defendants have not challenged the indictment as not being "valid on its face."
 
 
 18
 However questionable the practice may have been in presenting the case to the grand jury, it must be remembered that a duly-sworn witness actually testified to the factual correctness of all of the questions asked him by the prosecutor.
 
 
 19
 We therefore conclude that the trial court was not in error in overruling the motion to dismiss the indictment.
 
 B. Suppression of the Tapes
 
 20
 A much more difficult question is presented by the refusal of the trial court to exclude from evidence the contents of the intercepted telephone messages. We must first decide whether federal or state law controls our decision on whether the intercepts were valid. To begin with, we note that the intercepts here were based on an application by a state agent to a state court judge, and the "warrant" was issued by a state court judge. This Court has plainly held that under such circumstances, state law applies if it is "more rigorous" than the federal law. U.S. v. Domme, 753 F.2d 950 (11th Cir.1985) (citing U.S. v. Bascaro, 742 F.2d 1335, 1347 (11th Cir.1984)). In deciding this issue, we look, of course, not to the language of the statute alone, but to the state and federal court decisions interpreting the different statutes.
 
 
 21
 The federal statute, Title 18 U.S.C. Sec. 2518(1)(a-f), is, in all relevant aspects, identical with the Florida statute, 934.09(1)(a-f). Both statutes require that each application for an order authorizing or approving the interception of a wire or oral communication shall be in writing upon oath or affirmation and shall include the following information:
 
 
 22
 ... (e) A full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application and the action taken by the judge on each such application; ....
 
 
 23
 (Emphasis added)
 
 
 24
 The statutes also required "a full and complete statement" of other facts and circumstances upon which the applicant relied, but in view of the disposition we make of the appeal, it is not necessary to discuss them.
 
 
 25
 As to the requirements of both federal and state statutes quoted above, reference to the three applications to intercept show the following:
 
 
 26
 The initial application contained the following statement:
 
 
 27
 Your affiant has knowledge of a previous application made to a judge of the Fifteen Judicial Circuit to intercept or for approval of interceptions of wire communications which may involve some of the same persons, facilities, or places specified in this application.
 
 
 28
 The application for the first extension of time within which to intercept oral communications contained the following statement:
 
 
 29
 Your affiant has knowledge of previous applications made to judges of the Fourth and Fifteen Judicial Circuit to intercept or for approval of interceptions of wire communications which may involve some of the same persons, facilities, or places specified in this application.
 
 
 30
 The application for the second extension of time within which to intercept wire communications contained the following statement:
 
 
 31
 Your affiant has knowledge of previous applications made to judges of the Fourth and Fifteen Judicial Circuit of Florida and the Federal District of South Carolina to intercept or for approval of interceptions of wire communications which may involve some of the same persons, facilities, or places specified in this application.
 
 
 32
 None of the applications made the slightest reference to the requirement that all applications must include "a full and complete statement of ... the action taken by the judge on each such application."
 
 
 33
 It is plain that neither statute is more rigorous than the other. However, when we look to the state and federal court opinions interpreting the validity of the warrants issued under the respective statutes, as this Court did in Domme, supra, and Bascaro, supra, it is plain that the validity of such warrants issued by state judges as construed by the Florida courts is, so far as is relevant here, diametrically opposed to that of the federal courts.
 
 
 34
 Under the state decisions, the evidence obtained by this taped surveillance must be suppressed. Bagley v. State, 397 So.2d 1036 (Fla.D.C.App.1981); State v. Aurilio, 366 So.2d 71 (Fla.D.C.App.1978). The Florida Court of Appeals in Aurilio, had before it a case in which the trial court had suppressed information received by a telephone tape as to which the application failed to include a statement as to previous wiretap applications involving the persons whose communications were sought to be intercepted, i.e., the information specifically required to be set forth in the application by Section 934.09(1)(e). The Florida court, noting that the decision by the United States Supreme Court in U.S. v. Donovan, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), had held that not every omission of information called for by the statute would require suppression, clearly disagreed with the Supreme Court's decision, in interpreting the requirements of the Florida statute.
 
 
 35
 The Florida court referred to the dissent in Donovan and stated:
 
 
 36
 We have similar problems agreeing with the majority in Donovan. First, to agree, we must hold that the failure to comply with two important statutory requirements does not affect the validity of a wiretap application and an authorization issued pursuant thereto. Secondly, we cannot help but feel that a judge's decision to issue a wiretap authorization would be seriously affected by the disclosure of the details of previous wiretap applications. In other words, a judge may well deny an application knowing previous wiretaps have failed or that past applications have been denied or knowing other similar pertinent information. Thus, while we may agree that the failure to disclose the names of all potential persons to be intercepted may not play a "substantive role" in the authorization process, we cannot reach the same conclusion with respect to the failure to disclose information about prior wiretaps....
 
 
 37
 366 So.2d at 76.
 
 
 38
 Certainly no one could say that the Florida statute as construed by the Florida court is not more rigorous in its protection of the privacy of its citizens than are the federal courts as evidenced by the Florida courts' disagreement with Donovan. The less rigorous effect of the federal court's decisions is also illustrated in U.S. v. Van Horn, 789 F.2d 1492 (11th Cir.1986). There, this Court, in applying federal law, because the court was dealing with a federally issued intercept order, followed Donovan and held that "inadvertent noncompliance with the Section 2518(1)(e) disclosure requirement does not mandate suppression...." 789 F.2d at 1500.
 
 
 39
 Lest it be said that Bagley and Aurilio are not decisions of the Florida Supreme Court, we simply note that they are wholly consistent with, and rely on, the decision by the Florida Supreme Court in In re Grand Jury Investigation, 287 So.2d 43 (Fla.1973). There, the court stated:
 
 
 40
 That part of the Florida Statutes dealing with "Security of Communications", Chapter 934, Florida Statutes, F.S.A., and more particularly F.S. Sec. 934.07, F.S.A., authorizing interception of wire or oral communications of persons, is a statutory exception to the constitutional (federal and state) right to privacy. Therefore, as an exception to a constitutional right it must be strictly construed and narrowly limited in application to the uses delineated by the Florida Legislature.
 
 
 41
 287 So.2d at 47.
 
 
 42
 A "narrow limitation" in the application of Section 934.09(1)(e) must, as determined by the Florida Fourth District Court of Appeals, require the suppression of evidence obtained from an interception that was not validly authorized.
 
 
 43
 The trial court erred in not suppressing the testimony represented by the intercepts.
 
 
 44
 The judgments are REVERSED.