**UNITED STATES of America**

v.

**Joseph Louis LANZA, also known as
Joe Lanza, et al.**

**Crim. No. 71–83.**

United States District Court,
M. D. Florida,
Orlando Division.

Oct. 10, 1972.

930

Bernard H. Dempsey, Jr., Asst. U. S. Atty., Tampa, Fla., for the United States.

Walter G. Arnold, Jacksonville, Fla. and Edwin C. Cluster, Ocala, Fla., for Roy Thaggard Boyd.

James S. Byrd, Orlando, Fla., for Phillip C. Riffe.

Donald R. Corbett, Orlando, Fla., for Donald Miles.

Clinton A. Curtis, Jack P. Brandon, Lake Wales, Fla., for Vincent M. Razzano.

Leo W. Haley, Orlando, Fla., for James C. Britt, Peggy Ann Britt and Carrie Wise.

Edward R. Kirkland, Orlando, Fla., for Lee Massey, and William Anderson Fox.

Richard C. Langford, Lakeland, Fla., for Lillian Lockett, Janie Simon, Lee Lockett, Leroy Johnson, Mary Williams, Catherine Williams, Thelma McClary, James Ned Weaver, Gertrude Norman, Leola Ellis, Margaret Pressley, Joe Glover, Ruth Glover, Lula Mae Giles, Maggie Smith, Eddie Holland, and John Ray Simon.

Arnold D. Levine, Tampa, Fla., for John Newton Fountain.

David M. Porter, Orlando, Fla., for Ida Wall Silas, James Crabtree, Samuel Eugene White, William Ralph Strawder, Eloise Graham, Eddie Mitchell and Louis Constantino.

Frank Ragano, Tampa, Fla., for Joe Louis Lanza and Anne Fusco.

Richard S. Rhodes, Orlando, Fla., for Morris Engle, Richard Mercier, and Charles Edward McCuen.

James M. Russ, Orlando, Fla., for Donald B. Smith.

Michael Sigman, Orlando, Fla., for Morris Solomon Bort, Ester Cobbin McGee, and Louis B. Pacheco.

Dan R. Warren, Daytona Beach, Fla., for John Narducci, and Bruce O'Malley.

Andrew A. Welch, Orlando, Fla., for Henry A. Finkelstein, Matthew Smith, Frank Del Rosso, Robert Steve Shellhorn, Orville Johnson, III and Larry Gonzales.

## ORDER

TJOFLAT, District Judge.

On March 30, 1972, this Court entered an Order denying in part the motion of the sixty defendants in this organized crime gambling prosecution to suppress the evidence obtained through court-ordered wiretaps.[1] Subsequently, at a hearing on April 20, 1972, in Jacksonville, Florida, the parties concluded their evidence and arguments on the motion to suppress. Accordingly, this Order will dispose of the remaining issues relating to the wiretap evidence.

█ Initially, the defendants argue that the tape recordings of the wire intercepts are inadmissible because the government failed to furnish the tapes to the judge who entered the intercept order to be sealed pursuant to 18 U.S.C. § 2518(8)(a).[2] The testimony discloses that two tape recorders were used to simultaneously record each intercepted communication. One recorder contained the "original" tape which was replaced every day with a fresh tape. At the end of the day, the "original" was immediately removed to another recorder where a "duplicate" or "copy" was made; the original was then sealed. The second recorder contained a "work-tape" which was left on the recorder and not replaced until it was full. The defendants' position is that this "work-tape" is subject to the same seal requirements as the original tape. They argue that, whenever the original recorder malfunctioned, the work-tape would be the only one containing the recorded intercept. The evidence does show that one or both of the recorders malfunctioned at various times. Although there is no evidence of it in the record, the Court will assume, for purposes of argument, that the work-tape contains one or more evidentiary conversations not included in the original. The question to be resolved is the effect on the admissibility of the wiretap evidence as a whole. The sealing requirement of 18 U.S.C. § 2518(8)(a) is susceptible of two interpretations. The absence of the seal on one portion of a wire intercept can either bar the admissibility of the entire intercept or just that portion lacking the seal. If, for example, ten tapes were made on ten days and only nine were sealed, the question posed is whether Section 2518(8)(a) would bar the admission of one or all of the tapes.

According to the record in this case, the typed transcripts of conversations

---

1. United States v. Lanza, 341 F.Supp. 405 (M.D.Fla.1972).

2. 18 U.S.C. § 2518

(8) (a) The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire or oral communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders. They shall not be destroyed except upon an order of the issuing or denying judge and in any event shall be kept for ten years. Duplicate recordings may be made for use or disclosure pursuant to the provisions of subsections (1) and (2) of section 2517 of this chapter for investigations. The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived therefrom under subsection (3) of section 2517.

and trial tapes (containing the conversations the government planned to introduce in evidence) were made from the duplicate tapes, which were copied from the originals. There is no showing that anyone ever listened to or transcribed the work tapes or that any evidence was sought to be introduced at trial which was not on the original tapes under judicial seal. Under these circumstances, it cannot be said that any of the unsealed evidence prejudiced the defendants in any way. It is unnecessary to decide whether sealed conversations must be excluded from evidence when it is shown that unsealed conversations, pertinent or supplemental thereto, were recorded on work tapes while the original recorder was inoperative.

Next, the defendants contend that the Florida Department of Law Enforcement failed to conduct the wiretap pursuant to 18 U.S.C. § 2518(5)[3] so as to minimize the interception of communications not subject to lawful interception, that is, conversations either non-pertinent to the investigation or privileged. Defendants rely on United States v. Scott, 331 F.Supp. 233 (D.D.C.1971), for the proposition that the interception of non-pertinent calls requires the suppression of all intercepted communications. In *Scott*, virtually all calls were monitored and recorded and 60% of the calls were later determined to be non-pertinent. The Court's holding, however, was not that 60% was too many non-pertinent calls to satisfy the statute, but that the failure of the agents to make any attempt whatever to minimize the interception of the calls did not meet the statutory requirements.

■■ The statute does not prohibit the interception of non-pertinent calls; rather it requires the agents to conduct the wiretap so as to minimize such interception. When, as in *Scott*, this mandate is so blatantly ignored, the proper result is the suppression of the entire intercept. On the other hand, where non-pertinent calls are intercepted despite the agents' effort at minimization, only the unauthorized interceptions should be suppressed. United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa. 1971); United States v. King, 335 F. Supp. 523 (S.D.Cal.1971); United States v. Perillo, 333 F.Supp. 914 (D. Del.1971); United States v. Leta, 332 F. Supp. 1357 (M.D.Pa.1971).

In the case at bar, the agents intercepted 4,098 phone calls during the course of the six wiretaps. Of this number the government represents that 1,265 or 31% of the calls were of an evidentiary nature and 1,066 calls or 26% were recorded non-pertinent calls. 944 or 23% of the total calls were terminated non-pertinent calls, that is, the agents terminated the recording after hearing enough of the conversation to determine that the subject matter was in fact non-pertinent. Finally, there were 823 calls, or 20% of the total, which resulted in busy signals, no answers, wrong numbers, and the like.

The evidence in this record establishes that the agents were instructed to make a determination as to the subject matter of each call and to terminate privileged or non-pertinent communications. This is precisely what occurred on 944 calls. There are also instances on the tapes of clearly evidentiary conversations being terminated when the discussion turned from gambling to unrelated and non-pertinent matters. This is further evidence of the agents' awareness of and attentiveness to the requirement of minimization. Of the recorded non-pertinent conversations, a substantial portion of those were conversations which were too short to allow the agent to make a determination as to content or subject matter.

■ The Court has listened to all of the tapes and examined the transcripts

---

3. 18 U.S.C. § 2518(5) provides in part that:

Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, [and] shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter.

and monitoring logs and is fully satisfied that the agents made every reasonable effort to conduct the intercept so as to minimize the interception of non-pertinent and privileged conversations. In this respect, the requirements of the law were fully satisfied.

Another ground cited by defendants in support of their motion to suppress is that the State failed to make the requisite showing that other investigative techniques had been tried and failed or were unlikely to succeed.[4] The defendants argue, for example, that the State already had sufficient evidence to successfully prosecute the individuals against whom wiretap orders were sought and that the only reason for the taps was to gather information about unknown conspirators. In short, the defendants' position is that you can't monitor Mr. X's telephone to obtain evidence against a third party if you already have a case against Mr. X. It would be inconsistent, indeed, to require the State to aver in its application for a wiretap order on Mr. X's phone that normal techniques have failed if the only proper subject of wire investigation was Mr. X against whom the State could establish probable cause for arrest.

The State in this case had sufficient information about the initial wiretap subjects to realize that a large scale lottery operation was being conducted, which, by its very nature, necessarily involved a hierarchal conspiracy. The defendants point to no evidence that was available to the State through normal investigative techniques to pierce the veil of the conspiracy. The tapes themselves clearly show that the bulk of the transactions within the conspiracy were carried out by telephone. In many instances, conduct which was susceptible of ordinary surveillance was so isolated as to be discoverable only through the use of electronic surveillance.

The purpose of the exhaustion requirement is not to compel the State to employ every *possible* conventional technique, but merely to inform the authorizing judge of the difficulties encountered, and the lack of success in using conventional investigatory methods. 1968 U.S.Code Cong. & Admin.News, p. 2190; United States v. King, 335 F. Supp. 523 (S.D.Cal.1971).

The defendants have also argued that the State failed to terminate the interceptions upon the attainment of the authorized objective.[5] Again, it is not

---

4. 18 U.S.C. § 2518. Procedure for interception of wire or oral communications
 (1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
 * * * * *
 (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
 * * * * *
 (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the

judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—·
 * * * * *
 (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

5. 18 U.S.C. § 2518(5) provides in part that:
 No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days.
 * * * * *
 Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable . . . and must terminate upon attainment of the authorized objective, or in any event in thirty days.

reasonable to conclude that the only proper objective of the investigation was the arrest of a few known individuals selling lottery tickets.

 Finally, the defendants *complain* that background conversations or voices of third persons, not party to phone conversations being tapped, were overheard and intercepted. That such interceptions may occur does not render the wiretap unconstitutional or the evidence inadmissible, *United States v. Leta*, 332 F.Supp. 1357 (M.D.Pa.1971), and there are no facts in the record which would lead the Court to conclude that the entire interception was unreasonable.

Having considered all the arguments and memoranda submitted by the parties, the Court concludes that the wire interceptions in this case were conducted fully within the spirit and the letter of the law. It is, therefore

Ordered that the defendants' motion to suppress the wiretap evidence in this case is hereby denied.