297 So.2d 15 (1974)
Roland RODRIGUEZ et al., Petitioners,
v.
STATE of Florida, Respondent.
No. 44693.
Supreme Court of Florida.
June 26, 1974.
*16 Henry Gonzalez, Tampa, for petitioners.
Robert L. Shevin, Atty. Gen., and Charles Corces, Jr., Asst. Atty. Gen., for respondent.
DEKLE, Justice.
Jurisdiction vests in this Court pursuant to Art. V, § 3(b)(3), Fla. Const., F.S.A. on the basis of direct conflict between the opinion of the Second District Court of Appeal, reported at 284 So.2d 1 (1973), and the cases of Borrego v. State, 62 So.2d 43 (Fla. 1952); White v. State, 47 So.2d 863 (Fla. 1950); and Hamelmann v. State, 113 So.2d 394 (Fla.App.1st 1959).
Petitioners were convicted of aiding and assisting in the conducting of a lottery. In the course of their trial, evidence obtained from wiretaps conducted after obtaining an authorizing court order was admitted into evidence against petitioners. Petitioners had filed motions to quash the order authorizing the wiretaps and to suppress the evidence obtained from them, but these motions were denied. On appeal, the district court affirmed the convictions, holding that the affidavit upon which the wiretap order was based sufficiently established probable cause to support issuance of the order.
We are presented with two issues: whether the affidavit involved was sufficient to establish probable cause to support issuance of the order authorizing the wiretap on petitioners' home phones and, secondly, whether the wiretap recordings should have been suppressed for failure to conduct the tapping in such manner as would minimize interception of telephone conversations not within the scope of the intent of F.S. Ch. 934, F.S.A. We deal with these issues in turn.

PROBABLE CAUSE
F.S. § 934.09, F.S.A. provides the procedure under which a wiretap order may be issued; subsection (1)(b) requires a full and complete statement of the facts and circumstances relied upon to justify the applicant's belief that an order should be issued, including a number of particular required details. § 934.09(3) sets forth the matters which the judge must find to exist on the basis of the facts submitted by the applicant before a wiretap order can be issued. This section requires that the judge find: (1) probable cause to believe that an individual is committing, has committed or is about to commit an offense enumerated *17 in § 934.07 (which includes the offense here in question); (2) probable cause to believe that particular communications concerning that offense will be obtained through such a wiretap; (3) that normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous; and (4) probable cause to believe the facilities from which the communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person. It is this statutory standard which must be applied to determine whether the instant wiretap order was properly issued.
As the State has ably pointed out in its brief, the sufficiency of an affidavit to establish the necessary elements to support issuance of a wiretap order must be determined from a reading of the affidavit as a whole, not from bits and pieces read in isolation. We have thoroughly examined the affidavit involved here to determine its sufficiency in meeting the standards of F.S. § 934.09(3), F.S.A. After most carefully weighing its contents, we are impelled to conclude that the affidavit is insufficient due principally to "staleness." As can be readily seen from an examination of § 934.09(3), one of the matters which must be shown sufficiently to establish probable cause for belief is that the offense in question is being committed or is about to be committed and that the phones sought to be tapped are being used or are about to be used in connection with the commission of such offense. F.S. § 934.09(3)(a) and (b), F.S.A. The affidavit in question here establishes probable cause for belief that the offense in question had been committed in the past by the individuals in question and that the phones tapped had been used in connection with the commission of the offense; however, the affidavit wholly fails to show probable cause to believe that these matters were still occurring or would occur in the near future.
Reviewing the affidavit for indications of such present or near-future activity, we find: (1) the fact that there were three telephones in the house, each with a different number, and each listed to a bona fide occupant of the house; (2) a woman's statement that her husband worked for petitioner Roland Rodriguez as a bolita seller, made some 38 days prior to the date of the affidavit and flatly denied by her husband two days later; and (3) the statements, unconfirmed in any material detail, of a 17-year old former boyfriend of Petitioner Rodriguez' stepdaughter as to various gambling transactions he claimed to have seen in the house in question at some undisclosed past time or times. Aside from serious question as to the reliability of the ejected youth's statements (which includes his having been forbidden to return to his girlfriend's house) and the further fact that he was not a known, reliable informer, his statements (which apparently were given to the law enforcement agent who swore out the affidavit some time after March 4, 1970, the affidavit being dated March 20, 1970) totally fail to show that the matters he spoke of were continuing on the date of the affidavit (on which date the order was issued) or were about to recur. The most generous possible interpretation of the affidavit is that placed on it by the State in its brief that Petitioner Rodriguez' two prior lottery convictions, together with other evidences of gambling transactions involving Rodriguez the preceding year (1969), the fact of the three telephone lines, the woman's statement of her husband's employment by Rodriguez as a bolita seller (made 38 days before the affidavit) and the statements of the ejected 17-year old former boyfriend, tended to show the existence of a large continuing gambling operation in which Rodriguez was involved. While this recitation of facts indicates grounds for suspicion that Rodriguez was involved in a gambling operation using these telephones, the facts *18 shown are not sufficient to raise this suspicion to the level of probable cause to believe that the offense was still being committed or was about to be committed (§ 934.09(3)(a)) and that the telephones were still being used or were about to be used in the commission of the offense as compelled by § 934.09(3)(d).
A brief review of the cases dealing with probable cause is in order, particularly with reference to "staleness" and the distinction between "probable cause to believe" and mere "suspicion." The subject of "staleness" is exhaustively discussed, in connection with search warrants, in an excellent annotation at 100 A.L.R.2d 525, §§ 6 and 7. As the author of that annotation notes (footnote 12, p. 534), an interval of less than 4 days between occurrence of the facts relied on and issuance of the warrant has never been held so unreasonable as to vitiate a search warrant, but an interval of more than 49 days has always been held an unreasonably long delay. While we do not quarrel with the accuracy of this statement, we would note that the issue of "staleness" cannot be solved by a simple application of numbers of days without consideration of the overall particular circumstances presented by the case.
The leading authority on "staleness" in this state is Hamelmann v. State, supra, wherein it was said:
"Barring extraordinary circumstances which may be shown to exist in any given case, the pattern has been rather clearly established in courts of this country that if the observation of the alleged offense is not further remote than 30 days from the making of the affidavit and issuance of the warrant, a finding that there exists probable cause will not be disturbed. The contrary appears where the elapsed time is more than 30 days from the date of the observation to the date on which the affidavit is executed and the warrant issued." (113 So.2d 394, 396)
In the instant cause, the only matters mentioned in the affidavit which could come within this 30-day "rule of thumb" are the statement of the 17-year old former boyfriend as to activities he claims to have observed (at a time not specified) in the house, and the existence of the three telephone lines. Even if we extend the 30-day period by another several months, the only additional information added is the woman's statement that her husband worked for Petitioner Rodriguez as a bolita seller, a statement flatly denied by the husband two days later. Probable cause cannot be built on such a shaky foundation. Nor can we find any "extraordinary circumstances" to justify a finding of probable cause here. We reiterate that the 30-day period is not a hard-and-fast line, but only a "rule of thumb"; nonetheless, the affidavit presented in the instant cause falls short of establishing probable cause due to its "staleness."
The State contends that the affidavit here involved is not so "stale" as to fail to show probable cause in that it shows the existence of a large and continuing gambling operation, thus justifying an inference that the violation was continuing as of the date of the affidavit. It is true that the nature of the illegal activity has some bearing on the question of timeliness of the affidavit. See 100 A.L.R.2d 525, § 7. For example, an affidavit dealing with the offense of possession of marijuana in quantity less than five grams (F.S. § 893.13, F.S.A.) will become "stale" quickly (in view of the possibility that the alleged offender will either dispose of this quantity quickly or consume it himself), whereas an affidavit dealing with the offense of embezzlement may (depending on the particular circumstances involved) remain timely for a longer period. Although some matters listed in the instant affidavit may give rise to a suspicion that a large and continuous gambling operation existed, the totality of the facts set forth in this affidavit are not sufficient to establish probable cause to believe that the offense was being committed *19 or about to be committed at the time of the affidavit. The most generous construction we could place on this affidavit would be that it showed probable cause that the offense had been committed at some prior time or times and that it showed grounds for suspicion that it might still be continuing.
Mere suspicion is insufficient to authorize issuance of a wiretap order; § 934.09 specifically requires a finding of probable cause. Black's Law Dictionary defines probable cause for issuance of a search warrant as "reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant cautious man in believing party is guilty of offense charged"; more generally, probable cause is there defined as, "A reasonable ground for belief in the existence of facts warranting the proceedings complained of." In the context of the requirements of F.S. § 934.09(3), F.S.A., this may be stated as reasonable grounds for belief that the party whose communications are to be intercepted is committing or is about to commit one of the offenses enumerated in § 934.07; that particular communications concerning that offense will be obtained through such interception; and that the facilities or place involved is being used or about to be used in connection with the offense. The instant affidavit fails to meet this test. A current presence is lacking.
The State also contends that the timeliness requirement is met by the statement that Petitioner Rodriguez "is engaged in lottery operations as a banker" (emphasis theirs). However, this statement appears as part of a sentence which states that affiant during the past 17 months has received information from various law enforcement agencies that Rodriguez is engaged in lottery operations as a banker. Taken in context, this does not relate a present fact, but rather shows that affiant, over the preceding 17 months, had received information that petitioner Rodriguez was, at the time or times affiant received the information, engaged in an illegal lottery. This is not a present fact which would sustain a finding of timeliness sufficient to establish probable cause for issuance of the wiretap order.

MINIMIZATION
We turn now to the issue of minimization requirements of a wiretap. F.S. § 934.09(5), F.S.A. provides:
"Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective or in any event in thirty days." (emphasis ours).
The order here in question contained such a provision. We must determine, therefore, whether the persons conducting the interception violated the "minimization" requirements, that is, whether they conducted the interception in a manner designed to minimize the interception of communications not within the scope of the chapter; and, if not, then whether the evidence so obtained was properly admitted. In this regard, the State points out that although interception of communications was authorized for all three telephone lines in the house, they stopped recording on one of the three lines "because the conversations on that line were not relevant to the case"; their only other statement as to minimization is that one has merely to glance through the tape recordings to see that the conversations recorded were almost totally concerned with lottery operations. At no point does the State argue with petitioners' contention, supported by testimony, that the wiretapping devices used were capable of operating on a twenty-four hour basis each and every day of the authorized period, that there was continuous monitoring of all telephonic communications (including those between husband *20 and wife and between attorney and client), and that all conversations that were monitored were recorded. The only effort at minimization shown by the State is the discontinuance of the tap on the one line on which no communications relevant to the offense occurred; our own examination of this voluminous record does not reveal any other attempts at minimization. This is not a sufficient compliance with the statutory mandate incorporated into the authorizing order.
Although the wiretap minimization provision of § 934.09(5) has apparently never been construed by the courts of this State, we note that, with the exception of one comma, the above-quoted section is identical to 18 U.S.Code § 2518(5). Consequently, decisions of the federal courts interpreting that provision may aid us in arriving at a proper construction of our own statute. A recurrent theme found in the federal court decisions construing 18 U.S.C. § 2518(5) is whether or not privileged communications were intercepted. United States v. Manfredi, 488 F.2d 588 (CA2 1973); United States v. Bynum, 485 F.2d 490 (CA2 1973); United States v. King, 335 F. Supp. 523 (D.C.Cal., 1971); United States v. Lanza, 349 F. Supp. 929 (D.C. Fla. 1972); United States v. Sisca, 361 F. Supp. 735 (D.C.N.Y. 1973); United States v. LaGorga, 336 F. Supp. 190 (D.C.Pa. 1971). In each of these cases, the court took notice of specific instructions not to intercept and record privileged calls in the course of determining whether the minimization requirement had been met. Sub judice such privileged communications (specifically between husband and wife and between attorney and client) were intercepted and in at least one instance an attorney-client conversation which was intercepted was typed in its entirety in the transcripts.
Another aspect at which the federal courts have looked in determining whether the minimization requirements have been met is the percentage of interceptions which have been terminated as nonpertinent. United States v. Manfredi, supra; United States v. Bynum, supra; United States v. Cox, 462 F.2d 1293 (CA8, 1972); United States v. George, 465 F.2d 772 (CA6, 1972); United States v. King, supra; United States v. Lanza, supra; United States v. Sisca, supra; United States v. Scott, 331 F. Supp. 233 (D.C.D.C. 1971); United States v. LaGorga, supra. In the instant case, it appears that all conversations were intercepted and recorded during the period the taps were on the lines. The mere fact that every conversation made on a tapped phone was recorded in its entirety, standing alone, does not necessarily violate the minimization requirement. United States v. Bynum, supra. Minimization must be considered on a case-by-case basis. United States v. Cox, supra. However, such a continuous recording is a factor tending to show a failure to minimize.
The federal courts have also considered whether any judicial supervision over the actual interception procedures was exercised. United States v. Bynum, supra; United States v. Cox, supra; United States v. King, supra; United States v. Sisca, supra; United States v. Scott, supra; United States v. Focarile, 340 F. Supp. 1033 (D.C. Md. 1972). In this regard, the State's position is somewhat stronger, since the order required a written report to the authorizing judge each week; however, the record is not entirely clear that such reports were in fact made, although we presume that they must have been made.
Another factor which is sometimes considered in determining whether the minimization requirement has been met is whether the order authorizing the wiretap limited interception to a particular type or types of conversation (subject matter), and whether the agents monitoring the equipment were given specific directions as to how to effect minimization. United States v. Bynum, supra; United States v. George, supra; United States v. King, supra; United States v. Lanza, supra; United *21 States v. Sisca, supra; United States v. LaGorga, supra; United States v. Focarile, supra. Reverting to the facts before us, we find that the order specifically limits interception to those conversations dealing with gambling offenses; however, we find no indication that the monitoring agents were given specific directions as to how to effect minimization, nor any indication that such minimization efforts were made.
What is involved is a procedure toward which the statute is directed and requires reasonable effort to minimize interception of non-pertinent communications. The fact that non-pertinent calls were intercepted, or that hindsight shows a better means of meeting the requirement, is irrelevant, so long as a good-faith effort was made to comply with the requirement. In the instant cause, we can find no such effort. The only minimization to which the State has pointed is the termination of the tap on one of the three telephone lines in question. We note, however, that each tap was the subject of a separate, albeit identical, authorization order. It is therefore difficult to see how the termination of the tap on one line minimizes the interception of non-pertinent conversations on the other two lines under two separate wiretap authorization orders. But even if we treat the three taps as one, the requisite minimization effort has not been shown, and frankly appears to have been virtually ignored. As the federal cases have stated, the statute requires that the wiretap be conducted in such a manner as to minimize interception of non-pertinent conversations. United States v. Lanza, supra.
The question remaining is what remedy is to be applied for a failure to comply with the minimization requirement. On this point, the federal courts appear to have taken three differing positions. One group of cases, exemplified by United States v. Cox, supra, holds that only the portion of the wiretap evidence which was obtained in violation of the minimization requirements should be suppressed. This view analogizes to the situation where a search pursuant to a valid warrant results in seizure of materials not within the scope of the warrant as well as material within its scope. The attitude in this approach is that so long as the validly-seized materials (or pertinent communications) are not tainted by the seizure of the extraneous material (or conversations intercepted in violation of the minimization requirements), the material properly seized is admissible, and only the extraneous material (or improperly-intercepted conversations) should be suppressed.
A second group of cases, exemplified by United States v. George, supra, holds that where the minimization requirements are not met, all of the wiretap evidence must be suppressed. These cases take the position that to suppress only the improperly-intercepted communications would be to eliminate the deterrent effect of the requirement itself, and to place the court in the position of being a party to official wrongdoing, or, at best, to put on the courts the burden of remedying after the fact a wrong which the statute intended to prevent from ever occurring in the first place.
A third group of cases, exemplified by United States v. Lanza, supra, takes a middle position; we feel this position to be the most persuasive and adopt it. This group of cases holds that where the procedural requirements to minimize interception are blatently ignored, as we have found them to have been in the instant cause, the entire wiretap evidence must be suppressed; where violations of the minimization requirements occur despite efforts to meet the minimization requirements, however, only the unauthorized interceptions need be suppressed. As noted above, application of this rule to the instant cause requires suppression of all evidence obtained by this wiretap.
Inasmuch as the convictions of petitioners were based in substantial part on the improper admission of evidence obtained from the wiretaps in question, and since *22 we cannot state with sufficient certainty that the admission of this evidence was harmless error, the convictions must be reversed.
Accordingly, our writ of certiorari issues, and the decision of the Second District Court of Appeal is quashed with instructions to dismiss the charges and to discharge the petitioners.
It is so ordered.
ADKINS, C.J., and ROBERTS and ERVIN, JJ., concur.
OVERTON, J., dissents.