DANIEL S. PEARSON, Judge.
Murphy and Gould were convicted on pleas of nolo contendere of bookmaking and wagering, respectively, and having preserved for review the denials of their dis-positive motions to suppress evidence derived from an electronic surveillance conducted on a telephone in Murphy’s residence,[1] they appealed.
We reverse the judgments of conviction upon a holding that the affidavit filed in support of the application for an order authorizing the interception of communications on Murphy’s phone failed to establish reasonable grounds that Murphy, whose communications were to be intercepted, was committing or was about to commit an offense. The affidavit, read closely,[2] establishes that (a) the number of toll phone calls from Murphy’s telephone in September and October 1979 (the football season) substantially exceeded the number made in earlier months of the year; (b) there was an “un *1266 usual” amount of telephone activity for a private residence on certain hours of a weekend (December 28-30,1979), preceding the starting times of scheduled football games;[3] (c) in March and April 1979, the toll records for Murphy’s telephone showed three phone calls to a New York City phone number, which when called gave horse racing results by recorded message;[4] (d) during 1978, Murphy’s name and phone number were found in “certain documents" during the execution of a search warrant for bookmaking records on another persons’s premises;[5] (e) six phone calls were made from Murphy’s phone during the weekend of December 28-30, 1979, the time that the pen register was in operation, to a number listed to an individual who some four years before had been overheard an unstated number of times talking about bookmaking with unknown persons whose phone was tapped pursuant to a court order;[6] (f) physical surveillance on Murphy’s residence on December 29 and December 30,1979, for an unstated amount of time revealed that no people were observed, but that two cars seen parked at the residence were registered to a Helene Murphy, who was nakedly alleged to be Larry E. Murphy’s wife; (g) in 1963, some sixteen years before the wiretap application, Larry E. Murphy was arrested by Miami Beach Police for possession of gambling paraphernalia relating to football; (h) in November 1979, an anonymous caller stated that Murphy was operating a “big money sports betting operation.”[7] There is not the slightest reason to conclude that Murphy, against whom the intercept order was directed, was the user of the tapped phone unless we are willing, which we are not, to elevate his sixteen-year-old gambling conviction, the two cars registered to a Helene Murphy, the fact that the phone was registered in his name, and the unreliable anonymous tip into probable cause. While the other tenuous or stale information supports the suspicion that the phone itself was being used for a gambling operation, it does no more than that. The probable cause required by Section 934.09, Florida Statutes (1979), has not been shown.[8] See Rodriguez v. State, 297 So.2d 15 (Fla.1974).
Reversed with directions to vacate the convictions of the defendants.

. Gould’s conversations were intercepted during the wiretap.

. The State emphasizes that the affidavit consists of fourteen legal-size pages. Most of the affidavit is devoted to the background of the affiant and his familiarity with gambling and allegations concerning why investigative techniques other than wiretap would not succeed.

. This information was gained from a previous court order authorizing the use of a pen register.

. This allegation lends no support at all to the football bookmaking theory of the affidavit and, because of the limited number of calls, no support to the anonymous caller’s tip that Murphy operated a year-round sports betting operation.

. The “documents” are not described. We assume that were Murphy’s name and phone number found in bookmaking records, rather than on a slip of paper or in someone’s address book, that fact would have been prominently noted.

. There is not the slightest indication that this individual either in 1975 or in 1979 was a known bookmaker or gambler.

. This anonymous tip, so obviously deficient under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), is mentioned only because it is stated.

. Our disposition makes it unnecessary to address the defendants’ other attacks upon the validity of the affidavit and order.