UNITED STATES of America, Appellee,

v.

Eugene COUSER, Appellant.

UNITED STATES of America, Appellee,

v.

Tyrone ALLSBERRY, Appellant.

Nos. 82–5323(L), 82–5324.

United States Court of Appeals,
Fourth Circuit.

Argued March 9, 1984.

Decided April 25, 1984.

Gerald M. Richman, Columbia, Md., for appellant Eugene Couser.

Michael Gilbert, Baltimore, Md., for appellant Tyrone Allsberry.

James C. Savage, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., David B. Irwin, Asst. U.S. Atty., Baltimore, Md., LCDR Robert W. Ferguson, Sp. Asst. U.S. Atty., on brief), for appellee.

Before RUSSELL and CHAPMAN, Circuit Judges, and KAUFMAN,* District Judge.

FRANK A. KAUFMAN, Chief Judge.

██ The appellants in these two cases were jointly indicted, tried and convicted before a jury of drug offenses.[1] On appeal, Allsberry contends that agents of the Federal Drug Enforcement Administration and Baltimore City Police officers violated the provisions of 18 U.S.C. § 3109 in the

---

* Honorable Frank A. Kaufman, Chief Judge, United States District Court for the District of Maryland, sitting by designation.

1. Couser was convicted of possession of heroin with intent to distribute (21 U.S.C. § 841(a)(1)), conspiracy to distribute heroin (21 U.S.C. § 846), use of a telephone in furtherance of that conspiracy (21 U.S.C. § 843(b)), and continuing criminal enterprise (21 U.S.C. § 848). Allsberry was convicted of conspiracy to distribute heroin and use of a telephone in furtherance of that conspiracy.

execution of a federal search warrant which resulted in the seizure of evidence introduced at trial. Prior to trial, Judge Harvey concluded that those agents and officers had reason to believe that at the time of their entry, speed was required to prevent the destruction of evidence and that there was no time available for prior announcement and/or knock. In the face of the record in this case, those factual findings of the trial judge are not clearly erroneous. Accordingly, the denial of Allsberry's motion to suppress is affirmed. *See United States v. Carter*, 566 F.2d 1265, 1268–69 (5th Cir.), *cert. denied*, 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978).

Couser's appeal is based upon his contention that the application for the wiretap order and the wiretap order itself make no reference to the recording of any conversations between the user of the telephone to be tapped and others who might be present in the immediate area in which the telephone was located. In the course of the execution of the wiretap order, however, during periods when the supervising agent had no reason to minimize conversations, the microphone utilized in the wiretap picked up conversations between Couser or others who were making outgoing telephone calls and one or more persons in the vicinity of the telephone.[2] Couser argues that the trial judge erred in not suppressing the recordings of such conversations, contending that the wiretap application and

the order itself referred only to "wire communications," not "oral communications" and that, as those terms are defined in 18 U.S.C. §§ 2510(1) & (2), the order does not cover the intercepted background conversations.[3] The Government, in response, argues that, in common sense, background conversations involving a person using the phone should not be differentiated from conversations being held by that person over the telephone.

There is seemingly sparse case law with regard to that issue. In *United States v. King*, 335 F.Supp. 523, 548 (S.D.Cal.1971), *remanded, in part, on other grounds*, 478 F.2d 494 (9th Cir.), *cert. denied*, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 94 (1973), the Court concluded that background conversations should be suppressed because they were "not specifically described in the court order authorizing the wiretap," which specified only "wire communications." In *United States v. Lanza*, 349 F.Supp. 929, 934 (M.D.Fla.1972), citing to *King* (at 932) in connection with a minimization issue but not with regard to the background conversation question, Judge Tjoflat (then a district judge) held that background interceptions did "not render the wiretap unconstitutional or the evidence inadmissible." The *King* and *Lanza* opinions do not detail to any great extent the facts of those cases.[4] Under the facts of this case, all of the background conversations were statements by the individual who had the telephone

---

**2.** The wiretap which was installed in this case utilized the microphone already built into the telephone. Once that wiretap was installed, the recording equipment was automatically activated when the phone rang in connection with an incoming call or was picked up for an outgoing call. The microphone, once so activated, was sensitive enough to pick up conversations in the room in which the phone was located.

**3.** 18 U.S.C. §§ 2510(1) & (2) provide:
    As used in this chapter—
      (1) "wire communication" means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facili-

ties for the transmission of interstate or foreign communications;
      (2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation;
    . . . .

**4.** It is unclear, in *King*, for instance, whether the intercepted background conversations involved only the individual using the phone, as in the instant case, or whether the statements of those near the phone were also recorded. In *Lanza*, the wording of the wiretap order is not set out, either in the opinion reported at 349 F.Supp. 929 or in an earlier opinion reported at 341 F.Supp. 405.

receiver at his ear. Statements by those in the vicinity of, but not holding the telephone receiver, were not picked up.[5] Furthermore, the background conversations were picked up in circumstances which did not permit the government agent operating the recording and monitoring equipment to minimize the background conversations without danger of losing the entire call.[6]

In this case, it is not necessary for this Court to reach and decide questions related to the meaning of the terms "wire communication" and "oral communication" and whether the wiretap order covers the intercepted background conversations, since the district court's denial of Couser's quest for their suppression will be upheld for another reason.

During oral argument in this Court, counsel for Couser agreed that if the Government had sought to have included in the wiretap order a provision permitting the recording of background conversations such as those used in this case, there would have been more than sufficient factual basis for Judge Northrop, who issued that order, to have so broadened his order. Counsel for Couser also stated during oral argument that the broadening of such order, under those conditions, could have reasonably been anticipated if the same had been sought by the Government. In *United States v. Donovan*, 429 U.S. 413, 433–34, 97 S.Ct. 658, 671, 50 L.Ed.2d 652 (1977), Justice Powell, citing to two earlier Supreme Court decisions, wrote:

> Those cases hold that "[not] every failure to comply fully with any requirement

**5.** In one conversation, the tape reveals background sounds which accompany the voice of the individual on the phone.

**6.** According to testimony given by government agents during pretrial proceedings, when a call was minimized, the monitoring equipment revealed only whether the receiver was off the hook. The equipment did not disclose, during minimization, whether there was any conversation over the line. Accordingly, if minimization of those background conversations, which occurred either while the individual using the phone was on hold or during the dialing of an outgoing call but before response, had been attempted, the entire call could easily have been

provided in Title III would render the interception of wire or oral communications 'unlawful.'" *United States v. Chavez,* [416 U.S. 562, 574–75, 94 S.Ct. 1849, 1855–56, 40 L.Ed.2d 380 (1974)]. To the contrary, suppression is required only for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano,* [416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974)].

■ Under *Donovan, Chavez* and *Giordano,* suppression is not the required remedy for technical violations of the type arguably found in the instant case, in the absence of bad faith conduct on the part of the Government. *See,* in particular, *Donovan,* 429 U.S. at 436 & n. 23, 97 S.Ct. at 672 & n. 23. With regard to the issue of good faith, counsel for Couser contended in oral argument in this Court that, as a matter of practice, the Government, in a number of cases, intercepts and seeks to use background conversations under wiretap orders similar to the one issued in this case, that such a pattern of conduct by the Government should not be permitted to continue, and that suppression is accordingly required in this case. However, the record contains no indication of any lack of good faith on the part of any government officer in connection with the application for, or the execution of, the wiretap order.[7]

lost. Likewise, the equipment did not permit selective minimization of background conversation occurring in the midst of a call without risking the same result.

**7.** The affidavit submitted in support of the wiretap application shows that the Government had great difficulty in investigating Couser's activities. Couser changed residences frequently, conducted business only with trusted, long-time associates, and was thought to keep little or no drugs on his premises. The only reliable information sufficient to amount to probable cause came from informants whose dealings with Couser were confined to telephone conversations and to personal meetings outside of Cous-

Nevertheless, if only as a matter of good housekeeping, particularly in a context as sensitive as wiretaps, there would appear to be no reason why the Government should not specifically seek authority to listen to and to record background conversations such as those in the instant case at the same time as the Government seeks the authority to install and administer the wiretap. It would be hoped that in the future such policy and practice would be followed by the Government.

The question is also raised in this appeal as to whether the background conversation evidence in this case was obtained under circumstances which make applicable the "plain view" doctrine set forth in *Coolidge v. New Hampshire*, 403 U.S. 443, 465–74, 91 S.Ct. 2022, 2037–42, 29 L.Ed.2d 564 (1971). That doctrine requires that the agent must have a prior independent valid reason for being present at the point of "observation" (here, the point of listening), that the officer must immediately recognize the item seized as evidence, and that the discovery of the evidence must be inadvertent. All three conditions are present in this case. Insofar as "inadvertence" is concerned, it would appear to be little different from "good faith." *See United States v. Heldt*, 668 F.2d 1238, 1267–68 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Crouch*, 648 F.2d 932, 933 (4th Cir.), *cert. denied*, 454 U.S. 952, 102

S.Ct. 491, 70 L.Ed.2d 259 (1981); *United States v. Liberti*, 616 F.2d 34, 37 (2d Cir.), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980).

The "plain view" doctrine has developed in the context of Fourth Amendment requirements, *see Coolidge*, 403 U.S. at 465–74, 91 S.Ct. at 2037–42. The applicability of that doctrine herein negates Couser's contentions based upon any constitutional violation. However, whether the "plain view" doctrine is itself an exception to the federal *statutory* requirements relating to wiretaps and, if so, to what extent,[8] poses a question which need not be reached in this case, in view of our conclusion that if the wiretap order in this case does not cover any of the background conversations, the interception of those background conversations is not the type of statutory violation requiring suppression.

The judgments of the district court are affirmed.

---

er's residence. In such circumstances, the Government's contention that it knew little, if any, of what went on in Couser's premises, other than information which related to Couser's use of the telephone, is credible. Accordingly, it is hard to find support in the record for the contention that the Government knew that incriminating background conversations would occur, intended to seize them in the course of the wiretap and purposely omitted reference to such conversations in the application for the wiretap order.

**8.** *See United States v. Masciarelli*, 558 F.2d 1064, 1066–67 (2d Cir.1977). *United States v. Johnson*, 539 F.2d 181, 188 (D.C.Cir.1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977); *United States v. Pine*, 473 F.Supp. 349, 357–58 (D.Md.1978); *United States v. DePalma*, 461 F.Supp. 800, 825 & n. 32 (S.D.N.Y.1978); *United States v. Forlano*, 358 F.Supp. 56, 58–59 (S.D.N.Y.1973).