**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Sylvester Anthony DOMME, Jr. and
Thomas Allen Domme,
Defendants-Appellants.**

**No. 83–3695.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 21, 1985.

Paul A. Lehrman, Tallahassee, Fla., for defendants-appellants.

Michael Simpson, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS,* District Judge.

KRAVITCH, Circuit Judge:

Following a nonjury trial, the appellants, Sylvester Domme and Thomas Domme, were convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846, and possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). They appeal, challenging the trial court's denial of a motion to suppress evidence gathered from a wiretap. We affirm.

I.

The convictions of Sylvester Domme and Thomas Domme resulted from a lengthy investigation into the activities of several individuals allegedly involved in a large-scale drug distribution ring. Appellants were two of the principals in the scheme. Sylvester Domme shared ownership of a home in Panama City, Florida, located on Lindenwood Drive, with two other individuals, Aristides Brito and Tracy Brito. The Britos had resided in the home since at least the latter part of 1980. Sylvester Domme was first identified as a resident in August, 1981. Thomas Domme, Sylvester's brother, moved into the residence in December, 1982.

In response to complaints by neighbors concerning the unusual number of cars parked at the Lindenwood Drive home for short time periods, the Panama City Police Department began surveillance of the residence in December, 1980. An investigation revealed that many of the individuals who resided in or frequented the home were suspected of drug trafficking. Several confidential informants provided further details concerning the drug-related activities of these individuals. Based upon this information, James Gilbert, a Florida law enforcement officer, secured an order from a Florida Supreme Court Justice authorizing a wiretap on the telephone at the Lindenwood Drive residence.

The wiretap authorization was sought and obtained on May 31, 1983, and police began to monitor phone conversations a few days thereafter. Through the wiretap, police learned about a pending drug deal involving appellants, who planned to drive from Panama City to Fort Walton Beach to procure cocaine. Police surreptitiously observed the transaction take place in Fort Walton Beach. When the Dommes returned to Panama City they were arrested. A search of the Dommes' automobile produced a package containing cocaine. Armed with a warrant, police then searched the Lindenwood Drive residence. There they found a small quantity of marijuana, some incriminating photographs, several loaded firearms, and an assortment of drug paraphernalia.

Prior to trial, the Dommes moved to suppress the wiretap evidence, the cocaine, and the items seized from the house. They raised several contentions as to the legality of the wiretap, and contended that police lacked probable cause to search their car. The search of the house, they argued, was tainted by the prior unlawful police conduct. At the suppression hearing, the Dommes conceded that if the warrant used to obtain the wiretap was valid, then there was probable cause to support the search of the car and residence. The court denied the motion to suppress and admitted the evidence.

II.

■ It is well established that an attempt to monitor telephone conversations must comport with constitutional proscriptions. *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 517, 18 L.Ed.2d 576 (1967). In an effort to ensure more extensive protection of privacy, Congress enacted legislation that controls the use of electronic surveillance. 18 U.S.C. § 2510 *et seq.* This statutory scheme contemplates

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

state regulation that does not erode the federal standards, 18 U.S.C. § 2516(2), and Florida has enacted such legislation. Fla. Stat.Ann. § 934.01 *et seq.* (West 1973 & 1974–83 Supp.). This appeal presents issues relating to the constitutional and statutory limitations on wiretaps.

## A. Whether Information in the Affidavit Supporting Warrant was Stale.

■ Appellants contend that the affidavit in support of the wiretap application contained information that, although at some earlier date might have provided probable cause for electronic surveillance of the Lindenwood Drive residence, was stale. As with other types of search warrants, the probable cause needed to obtain a wiretap must exist at the time surveillance is authorized. *United States v. Bascaro,* 742 F.2d 1335, 1345 (11th Cir.1984); *United States v. Hyde,* 574 F.2d 856, 864 (5th Cir.1978). It does not satisfy the probable cause standard if the government can demonstrate only that the items to be seized could have been found at the specified location at some time in the past. Rather, the government must reveal facts that make it likely that the items being sought are in that place when the warrant issues. *United States v. Tehfe,* 722 F.2d 1114, 1119 (3d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1679, 80 L.Ed.2d 154 (1984).

■ Although staleness is an issue that courts must decide by evaluating the facts of a particular case, *Bascaro,* 742 F.2d at 1345, we are not without guidance in making this determination. The length of time between the date on which all of the facts supporting probable cause were known and the date the warrant was issued

is only one factor. Probable cause is not determined merely by counting the number of days between the facts relied upon and the warrant's issuance. *United States v. Rahn,* 511 F.2d 290, 292 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). Rather, the probable cause standard is a practical, nontechnical one. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). When criminal activity is protracted and continuous, it is more likely that the passage of time will not dissipate probable cause. *Tehfe,* 722 F.2d at 1119. In such circumstances, it is reasonable to assume that the activity has continued beyond the last dates mentioned in the affidavit, and may still be continuing. Time becomes less significant in the wiretap context, because the evidence sought to be seized is not a tangible object easily destroyed or removed. *Hyde,* 574 F.2d at 865. Therefore, when police describe telephone activity occurring over an extended period of time, the stale information issue should be construed less rigorously. *Bascaro,* 742 F.2d at 1346; *Tehfe,* 722 F.2d at 1119; *United States v. Martino,* 664 F.2d 860, 867 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982); *United States v. Weinrich,* 586 F.2d 481, 491–92 (5th Cir.1978); *Hyde,* 574 F.2d at 865; *United States v. Johnson,* 461 F.2d 285, 287 (10th Cir.1972).[1]

■ In the present case, a Florida Supreme Court Justice issued the wiretap order on May 31, 1983. The affidavit in support of the warrant application related that Sylvester Domme and his brother were suspected of drug trafficking between Florida and Kansas by the Topeka Police Department, as of August 12, 1982.

---

1. Appellants argue that Florida law establishes a "rule of thumb" that if the observation of the alleged offense is made more than 30 days from the date when the affidavit is made, the information is stale. *Rodriguez v. State,* 297 So.2d 15, 18 (Fla.1974); *Hamelmann v. State,* 113 So.2d 394, 396 (Fla.App.1959). The *Rodriguez* court itself recognized that the "issue of staleness cannot be solved by a simple application of numbers of days without consideration of the overall particular circumstances presented by

the case." 297 So.2d at 18. One of the factors identified and considered was the "nature of the illegal activity...." *Id.* The *Rodriguez* court concluded the affidavits in that case did not set forth sufficient information to establish that the activity was ongoing and continuous. *Id.* at 18–19. Thus, we do not believe that Florida's standard for determining whether information has become stale is more stringent than the federal standard. *See Hyde,* 574 F.2d at 865 & n. 5 (5th Cir.1978).

Other information in the affidavit, which in no way has been impugned by appellants, was based upon incidents told to police by seven confidential informants. One of the informants, who admitted being involved in cocaine trafficking, stated that between 1979 and 1981, Aristides Brito was involved in a huge drug distribution scheme, and sold over three million dollars worth of cocaine.[2] Two informants identified Sylvester Domme as the person who supplied cocaine to Patricia Harrison, in 1982. Harrison, who was described in the affidavit as Sylvester's girlfriend, advised one of the informants that Sylvester Domme was distributing large quantities of cocaine in the Panama City area. Another informant described a trip he made with Thomas Domme, in July, 1982, from Topeka to Tuscaloosa, Alabama, where Sylvester Domme sold them one and one-half pounds of cocaine. The informant who told this story had been working for the Topeka Police Department for five years, and had provided them with reliable information many times. The most recent information linking the Lindenwood Drive residents with drug trafficking was provided by an informant who related in April of 1983, that until very recently, Gregory Goodson had been supplying him with cocaine. Goodson, according to the informant, was supplied by an individual in Panama City, who police believed to be Sylvester Domme.

Pen registers recording the phone numbers dialed from the Lindenwood Drive residence, toll records reflecting the long distance calls placed, and police surveillance of the house, corroborated the relationships and incidents described by the confidential informants. In addition, surveillance that was conducted sporadically for over two years revealed that other persons who resided at or frequented the residence had extensive records of or were suspected of

drug-related activity. The phone information established that between January, 1982, and March 2, 1983, there were several hundred phone calls made from the Lindenwood Drive residence to persons suspected of drug trafficking. The phone number at the home had been changed five times in the twenty-eight months prior to the date of application. Agent Gilbert indicated that through his experience as a law enforcement officer, he had learned that this was a common practice among individuals engaged in drug dealing. At the time the warrant was sought, the phone was under the name of Donna Krawczyk, who police believed did not reside at the home.

Finally, the affidavit stated that Sylvester had held a license to practice medicine in the State of Kansas and moved from Kansas to Florida, where he purchased a building during 1981. Sylvester obtained an occupational license to conduct a medical business in the building, which was located in Panama City, and telephone service was established at the building under the listing of Dr. S.A. Domme, Jr., M.D., Physician/Surgeon. The phone number, however, was unpublished, and, according to one confidential informant, the office was never open for business. Police surveillance corroborated that no medical business was conducted at this office. Nor did Sylvester ever receive, or even apply for, a license to practice medicine in Florida.

◼ Taking a common sense approach to probable cause, *Illinois v. Gates*, 103 S.Ct. at 2328–31, we conclude that the affidavit presented sufficient information for the issuing Justice to believe that the telephone at the Lindenwood Drive residence was connected with drug trafficking at the time the warrant issued. The residents of the home had a long history of this activity,

---

**2.** Our focus here is on the activities of all the residents of the Lindenwood Drive home, not just those of appellants. A wiretap application need not provide probable cause of criminal activity for each person named in an application, or even every resident of the place where the wiretap is sought. *United States v. Martin*, 599 F.2d 880, 884–85 (9th Cir.) *cert. denied*, 441

U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1979). What is required is sufficient information so that a judge could find probable cause to believe that the telephone in question is being used in an illegal operation. *See Tehfe*, 722 F.2d 1114, 1118 (3d Cir.1983); *Hyde*, 574 F.2d at 856, 862 (5th Cir.1978).

which appeared to persist from the time police began surveillance of the home in 1980. In light of the less rigorous treatment accorded the stale information issue under these circumstances, the facts presented were sufficient to form a reasonable belief that the activities were continuing, despite the gap in time identified by appellants.[3] We hold that the information contained in the affidavit had not become so old as to no longer support the probable cause necessary to obtain a warrant.

### B. Whether the Amended Wiretap Order was Obtained Properly.

■ Three days after monitoring commenced, police learned that the telephone number for the residence would be changed. On June 14, 1983, police applied for an amended order authorizing a wiretap for the new phone number. The application for the amended order stated that the number would be changed, and incorporated the initial application by reference. The amended order was issued. Appellants challenge this action, contending that Florida law prohibits law enforcement agents who seek amended wiretap orders from merely incorporating the previous application by reference.[4]

■ Appellants point to *Bagley v. State*, 397 So.2d 1036 (Fla.App.1981), and *Wilson v. State*, 377 So.2d 237 (Fla.App.

1979), which held amended applications to be insufficient as a matter of state law when they merely incorporated information contained in earlier applications. Their argument, however, is foreclosed by our decision in *Bascaro*. There, the government obtained an amended wiretap order, which was sought by incorporating the original application, because the subject of the wiretap had changed one of his phone numbers before electronic surveillance had begun. Appellants in *Bascaro* raised the identical argument presented here. In distinguishing *Wilson* and *Bagley*, the *Bascaro* court observed that both of those cases involved the wiretap subject's change in residence. 742 F.2d at 1347–48; *see Bagley*, 397 So.2d at 1038; *Wilson*, 377 So.2d at 238–39. In such circumstances, incorporation of an original application by reference does not satisfy the requirement imposed by federal and Florida statutes that the application contain a complete statement about why alternative investigative procedures have been unsuccessful, or would be futile or too dangerous. 742 F.2d at 1347–48; *see* Fla. Stat.Ann. § 934.09(1)(c) (West 1973); 18 U.S.C. § 2518(1)(c). A mere change in telephone number without change in residence could not have affected the efficacy of alternative methods of investigation. 742 F.2d at 1348. Thus we conclude, as did the *Bascaro* court, that the failure to restate

---

**3.** In ruling on the motion to suppress, the court below concluded that the most recent information provided was eight weeks old. Appellants attack that conclusion as one that is clearly erroneous. Information that the court below stated was eight weeks old was provided by an informant who, on April 2, 1983, *eight weeks before the warrant issued,* stated that until very recently, Goodson had supplied him with cocaine. Appellants quite forcefully point out that this informant's statement did not necessarily mean that the most recent criminal activity engaged in by the Lindenwood Drive residents was eight weeks old. Rather, appellants urge that the last link between Goodson and the Dommes as provided by the affidavit was in January, 1983, when police spotted Goodson's car outside the Lindenwood Drive residence during surveillance. We agree that at some point the information in the affidavit could have become so stale that it would no longer support a finding of probable cause. The criminal activity de-

scribed in the affidavit was so extensive, however, that we conclude this point was not reached in this case. Even assuming that the most recent criminal activity described in the affidavits occurred in January, 1983, there was sufficient information that the illegal activity continued beyond that point. Telephone numbers recorded through early March indicated uninterrupted contact between the Lindenwood Drive residents and drug traffickers. Police surveillance disclosed that Sylvester Domme's "office" remained closed. These additional circumstances, although innocent when viewed in isolation, sufficed to allow the issuing Justice to conclude that probable cause was present. *See Bascaro,* 742 F.2d at 1346.

**4.** The validity of wiretap orders obtained in state court by state law enforcement personnel is dependent upon state law to the extent state requirements are more rigorous than federal requirements. *Bascaro,* 742 F.2d at 1347.

the information contained in the initial application did not violate Florida law.[5]

## C. Whether the Florida Attorney General had the Power to Authorize the Wiretap Applications.

Before Agent Gilbert sought the wiretap order from the Florida Supreme Court Justice, the Florida Attorney General authorized the application for the wiretap. Appellants challenge the Attorney General's power to authorize the application. 18 U.S.C. § 2516(2) provides that the "principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a [State] statute," may apply "to a State court judge of competent jurisdiction" for an order permitting wire interception. Florida's wiretap statute contains the following provision: "The Governor, the Attorney General, or any State Attorney may authorize an application to a judge [for a wiretap order]. . . ." Fla.Stat. Ann. § 934.07 (West Supp.1974–83). Appellants argue that despite the Florida statute's designation of the Attorney General as one who may authorize wiretap applications, the federal statute contemplates that this power will lie in the principal prosecuting attorney, a role reserved for the Governor of Florida.

 This argument is without merit. Congress's intent in empowering the principal prosecuting attorney of a state or subdivision to authorize wiretap applications was to "establish uniform standards not only on a federal level but in a state or county governing the authorization of interceptions, and to ensure adherence to these standards through centralizing responsibility in top level state and county prosecutors who can be held accountable for departures from preestablished policy. . . ." *United States v. Smith*, 726 F.2d 852, 856 (1st Cir.1984) (en banc); *see* S.Rep. No. 1097, 90th Cong., 2d Sess., 98 (1968), U.S.Code Cong. & Admin.News 1968, p.

2112. In most instances, the state's principal prosecuting attorney would be the Attorney General. Congress recognized, however, that the important question was not name, but function. S.Rep. No. 1097, at 98. Florida's authorization of the Attorney General as the officer charged with setting a statewide electronic surveillance policy is consistent with Congress's desires. The Florida Constitution designates the Attorney General as "the chief state legal officer." Fla. Const. art. IV, § 5. The Attorney General's duties include representing the state in all cases in which the state is a party or otherwise interested in the outcome. Fla.Stat.Ann. §§ 16.01(4)–(5) (West Supp.1984). *See State v. Bowman*, 437 So.2d 1095, 1096 (Fla.1983). Florida law further requires the Attorney General to supervise and direct all state attorneys. Fla.Stat.Ann. § 16.08 (West 1961).

*United States v. Pacheco*, 489 F.2d 554 (5th Cir.1974), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975), is not to the contrary. The *Pacheco* court was faced with the prior version of Florida's wiretap statute, which empowered the Governor to authorize applications for wiretap orders. Fla.Stat.Ann. § 934.07 (West 1973). In that case, the appellants argued that the Governor, who had authorized the application that produced evidence used to convict them, was not the principal prosecuting attorney within the meaning of the federal statute. The Fifth Circuit rejected their argument, stating that "[a]ppellants are in the position of complaining that they received too much protection rather than too little. . . ." 489 F.2d at 562. The court observed that "[i]n such matters of policy [electronic surveillance], the governor represents the state and is superior to all prosecuting attorneys. . . ." *Id.* at 562–63.

The *Pacheco* court did not hold, however, that the Governor is the principal prosecuting attorney of the State of Florida. Rather, the court simply recognized that a State's Governor, being its chief executive

---

**5.** Appellants also argue that the amended application contained information that was even more stale than the information contained in the initial application because a longer period of time had elapsed. This argument is without

merit, because the amended application did relate that the wiretap had produced more evidence that the residents of the home were engaging in drug trafficking.

officer, is ultimately responsible for setting statewide policy in most areas. *See id.* at 562 n. 14 (the issue in this case is whether the Attorney General's *superior* can approve wiretap applications). Thus, the inclusion of the Governor in the Florida wiretap statute was perfectly consistent with Congress's purpose to centralize the responsibility for wiretap authorization.

In short, the Attorney General remains the principal prosecuting attorney of the State of Florida, and therefore may authorize wiretap applications under the federal statute. The appellants in the instant case received all of the protection required by the express terms of the federal statute, and have no standing to challenge the fact that Florida, and this court's predecessor, have acknowledged the Governor's authority to approve wiretap applications. We therefore conclude that the federal statute was complied with in this case and we reject the argument that *Pacheco* requires us to reverse the appellants' convictions.

For the foregoing reasons we conclude that appellants' claims are without merit. Accordingly, the convictions are AFFIRMED.