# STATE OF FLORIDA v THOMAS

## Case No. 87-171

Nineteenth Judicial Circuit, Indian River County

June 4, 1987

## APPEARANCES OF COUNSEL

**State Attorney's Office** for plaintiff.

**Robert Makemson** for defendant.

## OPINION OF THE COURT

JOHN E. FENNELLY, Circuit Judge.

On March 2, 1987, Detective Peter Lenz made application for an Order authorizing interception of phone calls to number (305) 778-1916 located at 4239 29th Avenue, Vero Beach, Indian River County, Florida. This application contained the written authorization of Bruce H. Colton, State Attorney for the 19th Judicial Circuit.

The application consisted of seventeen typewritten pages that set forth in detail the facts and circumstances justifying issuance of the order, the inadequacy of other methods of investigation, a state of time period necessary, a full statement of other applications, and that fully satisfied the statutory criteria set forth in F.S. 934.07(1)(a) through (e).

Pursuant to the foregoing application an intercept order was issued on March 2, 1987. The order in all respects fully complied with F.S. 904(3)(a) through (e) and was directed to phone number (305) 778-1916 located at 4239 29th Avenue, Vero Beach, Indian River County, Florida. Pursuant to the order the intercept was connected on March 2, 1987 at 3:27 P.M.

On March 3, 1987, it was determined that the subscriber intended to change the phone number subject to the intercept. On March 3, 1987 the defendant Jimmy Killings further indicated his new number would be changed to 778-2863. The new number would be in place at the same location as described in the application.

Detective Lenz, upon receipt of this information, took the following actions (1) conferred with an officer experienced in wire tap surveillance (2) contacted the State Attorney's office and conferred with the State Attorney and an assistant, Mr. Joe Wild. As a result of these conversations prepared an amended application for intercept outlining the change in number. This document was approved verbally by the State Attorney prior to its submission to the issuing judge on March 4, 1987.

The Detective then took the application to the Judge who issued the original order. Pursuant to F.S. 904(2) the issuing Judge took testimony under oath reflecting the continued need for the intercept and the change in phone number.

Pursuant to the foregoing an amended intercept order was entered on March 4, 1987 which by its terms amended the original order to the new number contained in the amended application supplied by Detective Lenz. The amended order, by its terms, continues the original order in full force and effect except for this change.

2

It is unrebutted that Detective Lenz acted in complete good faith throughout the entire process and at every twist and turn of this convoluted and complex criminal investigation. It is further unrebutted that Detective Lenz believed, in reliance upon advice from the State Attorney, that his amended application incorporated by reference the original application. There has been no evidence to indicate Detective Lenz in any way mislead the Judge who entered both intercepts. [The relevant documents are attached to this opinion.]

It is also unrebutted that the only change from the original order involves the phone number, no other aspect of the application was effected in any way.

The defendant citing *Bagley v. State*, 397 So.2d 1036 (Fla. 5th DCA 1981) argues that the failure of the State Attorney to authorize the amendment in writing invalidates any attempt to amend. In the Court's view this error, if indeed error there be, is not fatal. The Fourth District in *State v. McManus*, 404 So.2d 757, *cert. denied*, 412 So.2d 468, upheld an authorized intercept even though the Circuit Judge had not dated or signed the order in question. The Court observed that "official oversights if satisfactorily explained will not constitute fatal defects where they are not proscribed and the defendant is not prejudiced." (*McManus* at 758)

In the present case the evidence clearly demonstrates that the State Attorney did *in fact* approve the amended application. The testimony also indicates that the State Attorney believed no written approval was necessary for the amendment.

Even if *Bagley* proscribes this procedure in the Court's view this was at best an official oversight that did not in any way prejudice the defendant in that the failure to sign did not in any way deprive the defendant of the safeguard erected by F.S. 934.07. (See also *U.S. v. Caggiano*, 667 F.2d 1176, (1982)).

The Court is not unaware of *State v. Tolmie*, 421 So.2d 1087 (Fla. 4th DCA 1982) which appears to conflict with *McManus*. However, unlike *Tolmie*, the amended application in the present case was in fact signed and sworn. There is no requirement contained in F.S. 934.07 that requires the authorization of the State Attorney to be sworn and signed.

For reasons to be discussed in a later part of this opinion the Court is of the view that significant changes in the law since *Tolmie* cast significant doubt on its continued vitality.

Defendant next points to the failure of the amended application to

3

comply with F.S. 934.09 (a) through (f), as a ground for suppression. In support of this contention, Defendant cites *Bagley*, noted supra and *Wilson v. State*, 377 So.2d 237 (Fla. 2d DCA 1979).

In *Wilson*, law enforcement officers obtained a valid intercept order on two numbers listed on the defendant at a Leasurewood Place location. After the order was issued, officers determined that the defendant had a new number at a new location. A Supplement and Amendment was duly filed that incorporated by reference the first application.

In the Second District's view the procedure was impermissible in that the incorporation of information from an old address could not possibly comply with the criteria of F.S. 934.904(1)(c). *Bagley* noted previously involved an identical factual scenario and the Fifth District, following *Bagley*, found incorporation by reference was insufficient to satisfy the requirements of F. S. 934.09(1)(c).

The State, on the other hand, argues that the present case involving a change in phone number only is factually distinguishable and that the proper rule of decision is supplied by the rational advanced in two Federal cases, *U.S. v. Bascaro*, 742 F.2d. — (1984) and *U.S. v. Domme*, 753 F.2d 950 (1985).

In *Bascaro* the Fifth Circuit, applying Florida law, distinguished both *Bagley* and *Wilson* from cases like the present one involving only a change of phone number. In the Fifth Circuit's view the incorporation by reference of the earlier amendment was permissible under State law. This because in the case of a phone number change the "efficacy of alternative investigative techniques or the continued existence of probable cause can't be questioned". (*Bascaro* at pg. 1348) Thus, the Fifth Circuit found the incorporating amendment "sufficient under Florida Law, the empty formality of restating information in the amendment that would in the context of the case necessarily be identical in every respect to that presented to the same Circuit Judge in the original application was not indispensable." (*Bascaro* at 1349). [In accord with *Bascaro*, see *U.S. v. Domme* and *U.S. v. Dennis*, 786 F.2d 1029 (11th Cir., 1985)]

In the Court's view the *Bascaro* rational presents a proper rule of decision in the present case. As in *Bascaro*, the change was to the phone number, not the address. This information was presented within two days to the issuing judge who authorized the intercept. The same conditions both as to necessity and probable cause were existent at the same location. Thus incorporation by reference, of the information in the first amendment, was permissible under Florida law.

4

Defendant finally argues that even if the foregoing was permissible the amended application was defective because it did not, in fact, incorporate the earlier application. In determining this issue the Court is constrained to follow two basic principles (1) the two documents, i.e., the amended application and amended order should be viewed as a whole; (2) the application and order should be evaluated in conformity with Mr. Justice Goldberg's views as to warrant searches which he so eloquently expressed in *Aguilar v. Texas* and *Spinelli v. U.S.*, i.e., not in a grudging fashion, not as legal technicians, but in a common sense manner (See above sources generally).

Viewed in this context the amended application clearly refers to the original order and asserts only that change. The amended order entered by the same judge *two days* later changes only that aspect and, most importantly, continues the original order in full force and effect.

Viewed as a whole it is abundantly clear that all the documents and orders were of one place and should be viewed, in realistic terms, in that way. Thus viewed, the Court finds the amended and original order are adequately incorporated into each other.

Assuming arguendo that the foregoing principles are incorrect, the Court is of the view that in view of changes in both Federal and State constitutional law, this motion must be denied.

It should be noted at the outset that the authorities cited by the defendant are all prior to the amendment of Article 1, Section 12 of our Constitution and the seminal decision of *U.S. v. Leon*, 104 S.Ct. 3405, 46 U.S. 897 (1984).

By its very terms, the amendment to Article 1 requires this court to construe Section 12 and its exclusionary rule in "conformity with the Fourth Amendment to the United States Constitution as interpreted by the United States Supreme Court".

Thus, the rational and rule of *Leon* are binding upon this Court.

In *Leon*, the Supreme Court, dealing with a defective warrant, squarely faced the issue of the efficacy of "indiscriminate applications of the exclusionary rule". In the Court's view application of the rule has been restricted to those areas "where its remedial objectives are most efficaciously served." (See *Leon* at pgs. 3412 and 3413). With regard to the exclusionary rule the Court viewed its remedial purpose, in the historical context, as a deterrent to law enforcement. That is to deter violations of constitutional rights by prohibiting use of evidence obtained in violation of them.

To the Court, application of the exclusionary rule to evidence gained

**5**

as a result of an improperly issued warrant "can not logically contribute to deterrence of Fourth Amendment violations." (See *Leon* at 3419)

Thus, in the Court's view, application of the exclusionary rule to cases where "an officer with objective good faith has obtained a search warrant from a judge or magistrate" will not "further the ends of the exclusionary rule in any way." (*Leon* at 3419) Mindful of the limits placed on the good faith doctrine the Court specifically finds that the magistrate was in no way misled, nor did he abandon his neutral and detached role, and in addition the affidavits and applications were not so "lacking in indicia of probable cause as to render official belief in its existence unreasonable". (*Leon* at 3421).

What is revealed by the facts before the Court is an officer who at every step of his investigation literally had the statute book in his hand. An officer who made every reasonable effort to ensure that his actions complied with the law. At every turn officer Lenz relied on the advice of the State Attorney and acted only upon judicial authorization. To apply the exclusionary rule in this case to these facts would, in the Court's view, be unwarranted.

DONE and ORDERED in Chambers, Stuart, Martin County, Florida, this the 4th day of June, 1987.