UNITED STATES of America, Plaintiff,

v.

Eusebio **ESCOBAR DE JESUS,**
et al., Defendants.

**Cr. No. 90–130(PG).**

United States District Court,
D. Puerto Rico.

Feb. 1, 1993.

**16**

Salixto Medina, Asst. U.S. Atty., Hato Rey, PR, for plaintiff.

Juan R. Acevedo Cruz, Hato Rey, PR, for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

A government informant acting on his own initiative 1) pays a telephone company the due charges for a telephone number subscribed to another individual so that it will not be disconnected and 2) places an extension line in an adjacent locale. Said telephone number happens to be wiretapped pursuant to a court order. Do the informant's acts bar the admission of incriminating evidence obtained via the wiretap? After careful analysis of the facts at

bar and the applicable law, the Court answers said question in the negative.

### The Facts[1]

Codefendant Eusebio Escobar De Jesus ("Escobar") and several other individuals presently face various charges stemming from an alleged conspiracy to import large-scale amounts of illegal narcotics into the Island and Mainland and further distribute them. A jury trial is presently scheduled for February 8, 1993 before this Court.

On March 15, 1990, the Government obtained this Court's approval to wiretap telephone number (809) 256–2600 for a period of thirty days.[2] Said number was subscribed to codefendant Escobar at Sueño Real Construction Company in Loíza. Adjacent to the Sueño Real locale was Colmado El Coquí, owned and operated by Mr. William Cedrés ("Cedrés"), a government informant and a principal witness in this case.

Escobar purchased the Sueño Real locale from Cedrés in late 1989. On December 8, 1989, Escobar signed a subscription contract with the Puerto Rico Telephone Company so as for phone number 256–2600 to be connected at Sueño Real for his business.[3] Escobar used this new phone line on several occasions. However, he never used the Sueño Real locale as his office nor actually moved his business thereto. Sometime in February or early March 1990, Escobar decided not to use 256–2600 any longer as, since the Sueño Real locale was open and unsecured, people used the phone to make long distance calls to places outside the Island. He therefore broke the telephone receiver and never paid the telephone company for the line's use. Cedrés however, acting *on his own initiative*, paid

---

1. Unless indicated otherwise, these are taken from Eusebio Escobar De Jesús' testimony at the December 29, 1992 suppression hearing held before this Court.

2. Based on the application presented by Assistant United States Attorney Salixto Medina Malavé and the affidavit of F.B.I. Special Agent Oscar C. Tejeda, the Court determined that probable cause existed to issue a wiretap order

pursuant to 18 U.S.C. § 2518. *See* Misc. No. 90–042(PG) (docket # 2). The validity of this order is not at issue here.

3. A copy of said contract was offered into evidence by the Government as Exhibit I. Such contract belies Escobar's contention that the installation of 256–2600 at Sueño Real was solely prompted by Cedrés.

Escobar's outstanding phone bills and extended a phone line to El Coquí.[4]

Escobar never found out that he was still being billed for the use of 256–6000. However, he was well aware that Cedrés had an extension line of said number at El Coquí, as he himself used it on several occasions. On April 8, 1990 he even called the number. Also, although he did not give the number to anyone nor used it to receive messages, he was well aware that Cedrés gave said number to other persons so that they in turn, could contact Escobar.

### The Motion to Suppress

Escobar presently prays that this Court suppress all incriminating evidence seized via the wiretap of phone number 256–2600 or fruits thereof pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 41, the Fourth Amendment to the Constitution, and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.* In essence, he contends that the Court's March 15, 1990 wiretap order did not authorize the Government to intercept communications via the El Coquí extension line.

### Discussion

#### I. The Federal Wiretap Law

■ In his renowned dissenting opinion in *Olmsted v. United States,* 277 U.S. 438, 471, 48 S.Ct. 564, 570, 72 L.Ed. 944 (1928), Justice Brandeis expressed his belief that the Fourth Amendment applied to the Government's interception of a telephone communication. Forty years later, his enlightened dissent became the law of our land in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The year following *Katz,* Congress enacted the Omnibus Crime Control and Safe Street Act of 1968, P.L. 90–351, 82 Stat. 197 (1968). Title III of the same (18 U.S.C. § 2510 *et seq.*) was devoted wholly to wiretapping and electronic surveillance.

4. At the suppression hearing, F.B.I. Agent Tejeda testified that the Government did not order Cedrés to pay the bill for 256–2600. The Court finds said testimony credible.

5. Congress amended Title III via the Electronic Communications Privacy Act of 1986, P.L. 99–508, 100 Stat. 1848 (1986). "The bill amends the

Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. *To assure the privacy of oral and wire communications, title III prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officers engaged in the investigation or prevention of specified types of serious crimes, and only after authorization of a court order obtained after a showing and finding of probable cause* (emphasis added).

S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153.[5]

The legislative history of Title III convinces the Court that Congress intended that wiretapping by the Government—a search under the Fourth Amendment, and hence an invasion of an individual's privacy—will only be sanctioned upon a court's issuance of an order after a finding of probable cause. At the same time, the legislative history of the statute also convinces the Court that Congress recognized wiretapping as a powerful tool for crusading against the forces of organized crime:

These statements favored almost without exception legislation granting carefully circumscribed authority to law enforcement officials to engage in wiretapping and electronic surveillance in the investigation of certain serious crimes after obtaining a court order.

1968 U.S.C.C.A.N. at 2163.

#### II. Does a valid wiretap order apply to all line extensions of a given telephone number?

■ Section 2518(1)(b) of Title 18 United States Code states that each application for a wiretap order shall contain:

1968 law to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer an telecommunications technologies." S.Rep. No. 99–541, 99th Cong., 2d Sess. (1986), *reprinted in* 1986 U.S.C.C.A.N. at 3555.

a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) *a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted,* (iii) *a particular description of the type of communication sought to be intercepted,* (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted (emphasis added).

Similarly, Section 2518(4) states that every order authorizing a wiretap shall contain:

(a) the identity of the person, if known, whose communications are to be intercepted;

(b) *the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;*

(c) *a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;*

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained (emphasis added).

Neither of the above provisos nor any other proviso in Title III requires that a surveillance order list with particularity the number of phone line extensions belonging to a particular wiretapped telephone number. Nor will this Court read such a requirement into the statute. *See United States v. Feldman,* 606 F.2d 673, 680 (6th Cir.1979).[6] Such requirement would simply thwart Title III's law enforcement purpose.[7] Criminals could simply install several extension lines and, upon being apprehended, could raise as suppression grounds the fact that a court order does not mention the existence or location of a particular extension line.

■ The fact that the extension line installed and used by Cedrés was located at the adjacent structure to that where the original phone was located does not alter the Court's conclusion.[8] The Court's wiretap order mentioned that the original phone number line was connected at Sueño Real. This satisfies the Fourth Amendment and Title III requirement that once a court determines the existence of probable cause, it then describe with particularity in the warrant the *phone number* to be wiretapped and the particular conversations to be seized.

III. *Do Cedrés' arrangements with the telephone company so as to keep 256–2600 in use invalidate the legality of the Court's wiretap order?*

■ The particular circumstances of this case lead the Court to conclude that the

---

**6.** The defendant cites several Eleventh Circuit cases for the contrary proposition. In *United States v. Dennis,* 786 F.2d 1029 (11th Cir.1986), the court held that the same affidavit used to obtain a wiretap could later be used to obtain a second wiretap for a different line at a different location. In *United States v. Domme,* 753 F.2d 950 (11th Cir.1985) and *United States v. Bascaro,* 742 F.2d 1335 (11th Cir.1984), the Court held that the same affidavit could be used to obtain a second wiretap for a different phone in the same residence. None of these cases however, discusses whether a new court order is necessary to wiretap an extension of the original phone line.

**7.** When neither the language nor legislative history of a statute answer a particular issue, a court should ask itself: what result does the statute's overall purpose favor? *See Versyss Inc. v. Coopers and Lybrand,* No. 92–1212, slip op. at 9, 982 F.2d 653, 656–57 (1st Cir. December 30, 1992). Such an analysis becomes key in instances such as the present one where jurisprudence on the issue to be resolved is wholly lacking.

**8.** As stated earlier in this opinion, Escobar knew that the 256–2600 telephone number was working, even though he did not know he was still being billed for its use.

evidence obtained via the wiretap is admissible at trial even though, were it not for Cedrés, 256–2600 would have been disconnected by the telephone company. First, the Government fully complied with all Title III and Fourth Amendment requirements by requesting and obtaining a court order to wiretap 256–2600—a telephone number subscribed to Escobar upon his own request as evidenced by Government Exhibit I. Second, Cedrés acted on *his own initiative* when he made the necessary arrangements to keep Escobar's phone number connected. The fact that Cedrés was an informant, in and of itself, does not lead to an opposite conclusion. As stated at footnote four of this opinion, and uncontradicted evidencewise by Escobar, the Government never coaxed Cedrés into making arrangements with the telephone company to keep 256–2600 in use. Finally, after breaking the phone at Sueño Real, Escobar himself acquiesced to Cedrés' installation of an extension line at El Coquí as well as to his continued use of the telephone number. The wiretap to 256–2600, hence, never became illegal.

### Conclusion

In the Court's opinion admitting the evidence at trial does not violate Title III nor the Fourth Amendment. WHEREFORE, for the reasons previously discussed, Escobar's motion to suppress (docket # 578) is hereby DENIED.

IT IS SO ORDERED.

